CITY OF TARPON SPRINGS, ET AL., *Appellants*, v. H. J. SMITH AND LAKE BUTLER VILLA COMPANY, *Appellees*.

Opinion Filed April 7, 1921.

Petition for Rehearing Denied June 10, 1921.

1. Lands not covered by navigable waters and not included in the shore space between ordinary high and low water mark immediately bordering on navigable waters are the subject of private ownership, at least when the public rights of navigation, etc., are not thereby unlawfully impaired.

2. Riparian rights generally are incident to a street easement only when and at the points where the street, by express provision or by intendment, extends to a navigable body of water.

3. Where a dedication plat shows that a street line at some points extends to and along the water line of a navigable body of water, and at other points the street lines depart from the water line, and after encompassing considerable space again return to the water line, there may be riparian rights incident to the street easement at the points where the line of the street and the navigable water line coincide or join, but there may be under appropriate circumstances no riparian rights incident to the street where the street and water lines do not intersect, when it appears that the space delineated between the water line and the street line was not dedicated.

4. Where a municipality apparently has rights in an easement in land that is in controversy between private parties, but the record affords no sufficient data for a proper decree as to the city, the rights of the other parties may be expressly adjudicated without prejudice to the municipality. Nor is the State prejudiced by the decree.

5.  A party asserting a counter claim by answer in equity, as permitted by statute, has the burden of proof as to such counter claim seeking affirmative relief upon averments of new matter.

An Appeal from the Circuit Court for Pinellas County; O. K. Reaves, Judge.

Affirmed.

*Whitaker, Himes & Whitaker,* for Appellants;

*James F. Glen* and *Leroy Brandon,* for Appellees.

### STATEMENT.

A bill was filed October 19, 1917, by H. J. Smith against William Powell Wilson and Lucy L. W. Wilson, his wife, and the City of Tarpon Springs, a municipal corporation, in which it is in substance alleged that the Lake Butler Villa Company, a corporation, being the owner of certain real estate, on April 28, 1883, "made a plat of Tarpon Springs which was duly recorded;" "that prior to the filing of the said plat the said Lake Butler Villa Company caused the premises platted to be surveyed and marked with stakes on the ground, identifying the various blocks and lots as shown by the said plat, and block 54 was subdivided into various lots, as shown upon the said plat, including lot two on the north of said block, which is the one particularly involved in this controversy; that the said plat, among other things, shows a street called Anclote Boulevard, forty feet wide, and to the north of said Anclote Boulevard it shows a parcel of land intervening between the said boulevard and the Anclote River, which land, at the time of making the said

plat was low and swampy land, but land not covered by water at high tide, and intervened between the said Anclote Boulevard as staked on the ground and the southern bank of Anclote River, the said strip of land so intervening between the northern boundary of Anclote Boulevard and the high water mark in Anclote River extending about nine feet in width at the eastern extremity of the said lot two and five hundred twenty-five feet in width at the western extremity thereof;" that after the plat was filed for record, the Lake Butler Villa Company conveyed in fee simple to William Powell Wilson and Jessie Wilcox Wilson, his wife, lot 2, block 54, according to the plat, "together with all the contiguous marsh on the Anclote River front;" that said conveyance constituted the grantees, husband and wife, "tenants by entireties in the said property;" that the wife, Jessie Wilcox Wilson, died, so that the husband became the absolute owner in fee of the property; that William Powell Wilson afterwards subdivided lot 2; block 54 into lots and blocks, and caused a plat of said subdivision to be duly recorded, "which plat * * * shows that the said strip of low and swamp land intervening between Anclote Boulevard and the said Anclote River;" that after the recordation of the latter plat, William Powell Wilson made conveyances of lots "by reference to said plat, but did not convey to such purchasers, or to any one, the low marsh land to the north of Anclote Boulevard, or any portion thereof; that in 1913 complainant "bargained with the said William Powell Wilson to purchase from him all of the lots in the said plat of which he continued to be the owner, including the low marsh land to the north of the said Anclote Boulevard, and the said William Powell Wilson agreed to sell the said lots, together with the said marsh land to your orator for the sum of Fifteen

Hundred ($1,500.00) Dollars, which was paid to the said William Powell Wilson, and thereupon the said William Powell Wilson, joined by his then wife, Lucy L. W. Wilson, for the purpose of conveying the said property to complainant, executed a warranty deed of conveyance embracing the lots of which he then remained the owner, included in the plat hereto, and in order to convey to complainant the low marsh land aforesaid to the north of Anclote Boulevard, repeated in the said deed of conveyance the same words used in the deed of conveyance from the Lake Butler Villa Company to him, namely: 'together with all the contiguous marsh on the Anclote River front,' and by the use of the said words it was the intention and purpose of complainant and the said William Powell Wilson and Lucy L. W. Wilson, his wife, to convey to complainant in fee simple all the marsh land fronting on the Anclote River, which had been conveyed to the said William Powell Wilson and Jessie Wilcox Wilson by the aforesaid deed of conveyance from the Lake Butler Villa Company, and not merely to convey to complainant the low or marsh land on the Anclote River front contiguous to the lots remaining unsold described in the said deed of conveyance from the said William Powell Wilson and wife to complainant, a certified copy of which is hereunto annexed as Exhibit 'C' hereto, and hereby made by reference a part of this bill of complaint; that it was solely by reason of a mistake in the scrivener in drawing up the deed of conveyance last mentioned that the low or marsh land embraced therein was described as contiguous to the property described in the said deed of conveyance, and it was the mutual intention and purpose of your orator and the said William Powell Wilson and Lucy L. W. Wilson, his wife, that complainant by his purchase should acquire title to all of the low or marsh

land on the Anclote River front contiguous to lot two of block fiifty-four as the same was conveyed by the Lake Butler Villa Company to the said William Powell Wilson and Jessie Wilcox Wilson, his wife, and it was the intention and purpose of all parties that the words used in the deed to complainant should convey the same to complainant; that thereafter, to-wit, on the 18th day of October, 1917, the Lake Butler Villa Company executed and delivered to complainant a deed of conveyance whereby it conveyed to complainant all of its right, title and interest in that portion of Anclote Boulevard abutting lot two of block fifty-four, according to the original plat of Tarpon Springs, and also all riparian property to the north of Anclote Boulevard in front of the said lot two of block fifty-four; that complainant is now the owner of all the property and rights conveyed to him by the deed of conveyance last mentioned, and also in equity the owner of all contiguous marsh on the Anclote River front in front of lot two of block fifty-four, according to the original map of Tarpon Springs; that in the year 1916 the City of Tarpon Springs caused Anclote Boulevard to be curbed and paved and located the same by reference to the original stakes placed on the ground at the time the original map of Tarpon Springs was made, and the said street as so permanently located by the City of Tarpon Springs is shown by the plat, and leaves a strip of low or swamp land north of the north boundary of the said street outside the limits thereof as shown on the said plat, and the said City of Tarpon Springs in assessing the property abutting on the said street for the cost of such paving and curbing recognized that the property to the north of the north boundary of said street was property held in private ownership by assessing one-third of the cost thereof against such abutting property; that

afterwards, to-wit, on the 12th day of January, 1917, the defendant, City of Tarpon Springs, procured the defendants, William Powell Wilson and Lucy L. W. Wilson, his wife, to execute and deliver to it a quit-claim deed undertaking to convey, to it the tract of land lying and situated between the north boundary of the Anclote Boulevard and the Anclote River, extending from the intersection of the east boundary of Athens Street and the Anclote River in a westerly direction along the bank of the Anclote River to a point north of the intersection of the west boundary of Cross Street and the Anclote River, together with all riparian rights thereto; also, any land, marsh and riparian rights thereto on the south bank of the Anclote River not heretofore conveyed by the said Wilson to any other parties, which property is a portion of the property intended to be conveyed by the deed of conveyance from the said William Powell Wilson and wife to complainant, Exhibit 'C' hereto, and your orator avers that the said deed to the said defendant, City of Tarpon Springs, was made by defendants, William Powell Wilson and his wife, without any consideration, and is a mere quit-claim deed and the execution thereof was procured by certain representations made to the said William Powell Wilson by the City of Tarpon Springs of the nature of which complainant is not informed except that complainant is advised that the same were untrue, and your orator avers that by reason of the fact that the said quit-claim deed was made without consideration and by reason of the fact that the same is a quit-claim deed, the defendant, City of Tarpon Springs, stands in the shoes of the defendant, William Powell Wilson, and complainant is entitled to the same relief as against it, to which he is entitled as against the said William Powell Wilson; and complainant further alleges

that the defendant, City of Tarpon Springs, at the time it secured the said quit-claim deed was fully advised of your orator's rights in the premises."

The prayer is that the deed of conveyance from William Powell Wilson and wife to the complainant be reformed to cover the *locus in quo* pursuant to the mutual intent of the parties thereto.

By stipulation the Lake Butler Villa Company was made a co-complainant with H. J. Smith.

The defendants William Powell Wilson and his wife conceded the claims of the complainant H. J. Smith.

The answer of the City of Tarpon Springs contained, among other things, the following allegations as abstracted by counsel for appellant:

That the Lake Butler Villa Company at the time of the making of its original map of the Town of Tarpon Springs, was not owner of that part of the property now embraced within the corporate limits of said city and covered by said map, which constituted the bed and shores of certain navigable waters, including the Anclote River, wherein the tide then, since and now ebbs and flows; that along said navigable waters within the limits of said town, as laid out upon the map, at some points the bank was so abrupt as to leave no land covered with water at high tide that was not covered at low tide, whereas at other points there existed a considerable shore space covered at high tide which was not covered at low tide, and forming a marsh area; that a complete copy of the original map of Tarpon Springs was attached to the answer; that the Lake Butler Villa Company on said map laid out certain streets along the shores of the navigable waters in

the town, including Anclote River of an irregular course
or direction, but conforming to the meanders of the high
water mark thereof, and which had the high water mark
for the boundaries thereof on the side next thereto, one of
which said streets was Anclote Boulevard; that said Lake
Butler Villa Company, at the time of filing said map, was
not the owner of the bed or shores of said navigable
waters, or the space along the same between the high and
low water mark thereof, and had therein and thereto only
such riparian rights as appertained to its ownership of
property abutting on said navigable waters; that the
presence of said navigable waters, and the availability
thereof for commerce, navigation, boating and fishing was
one of the chief inducements which led the Lake Butler
Villa Company to locate the Town of Tarpon Springs in
the locality selected; that Anclote Boulevard extended to,
and had for its boundary, on its side next to the Anclote
River, the high water mark of said river throughout its
entire length; that Anclote Boulevard, as laid out and
designated on the original map, provided and indicated
on the side of said street next to Anclote River, that said
street should extend to the waters of said river; that
where the line of the high water mark and the low water
mark practically coincide, the map employed only a single
line to designate the edge of the water constituting the
street boundary, but where a considerable shore space
existed between the high water mark and the low water
mark, the map attempted to delineate the location of both
the high water mark and the low water mark, so as to
indicate the intervening shore space; that where Anclote
Boulevard forms the Northern boundary of Lot two (2)
of Block fifty-four (54), for a portion of the distance,
there was no substantial difference between the location
of the high water mark and the low water mark of the

river, and it so appeared upon the map; whereas, for the remainder of the distance there was a considerable divergence between the high water mark and the low water mark between which intervened a shore space of low marsh land (the *locus in quo*), the boundaries of which were delineated upon said map, and by which, along the shore space last mentioned, said boulevard was laid out to extend and project to and along the high water mark of said river, which shore space constitutes the subject matter of the present litigation; that after the filing of said map, the Lake Butler Villa Company conveyed all of the property platted thereon into lots and blocks by reference to said map, and thereby dedicated to and for the public use said Anclote Boulevard, together with all the rights which said company had in and to all the shore space along said boulevard between it and the channel of the river, where said boulevard formed one of the boundaries of Lot two (2) of Block fifty-four (54) of the town, and that said dedication continued to remain in full force and effect; that it was untrue that there existed any intervening parcel of land between Anclote Boulevard and the Anclote River, as asserted in the bill of complaint, and on the map attached thereto as Exhibit "B" thereof, or that any such intervening land existed between said boulevard, as staked out on the ground and the said river; that it was untrue that William Powell Wilson and Jessie Wilcox Wilson acquired by their deed from the Lake Butler Villa Company the ownership of the alleged strip of land in the bill of complaint referred to, or thereby acquired any title therein and thereto; that the plat of William Powell Wilson's subdivision of Lot two (2) of Block fifty-four (54) showed that Anclote Boulevard on its Northern boundary extended to the high water mark of the Anclote River, and that the alleged intervening strip of land was a part

of the shore of the river, extending between its high water and low water mark; that it was untrue that at the time of the execution by William Powell. Wilson to the complainant of the first deed in the bill of complaint mentioned, William Powell Wilson was the owner of the alleged marsh land lying North of the Anclote Boulevard, as in the bill of complaint asserted; that the defendant was without knowledge of any mistake in the execution of the deed mentioned, and strict proof was demanded of the allegations of the bill with respect thereto; that it was untrue that the complainant owned or had any interest in the premises, or right to the premises sought to be embraced in his deed by reformation thereof; that it was untrue that any strip of land, as alleged in the bill of complaint, intervened between Anclote Boulevard, as laid out and established, and the Anclote River, as asserted in the bill of complaint, and on the map thereto attached, or that the city had ever recognized the existence of said strip by assessing any portion of the cost of paving against the same, or otherwise; that it was untrue that the city had obtained its quit claim deed by any false representations, and it was further untrue that the city stood in the shoes of the defendant, William Powell Wilson, or that the complainant was entitled to the same relief against the said city to which he might be entitled as against William Powell Wilson; that by virtue of the facts stated in the answer, there had been an irrevocable dedication by the Lake Butler Villa Company to and for the use of the public, including the inhabitants of the Town of Tarpon Springs, of the streets shown upon the original map of the town, including Anclote Boulevard, together with all riparian rights to and over the shore of said river projecting outward to the channel of said river from the Northern boundary of Anclote Boulevard,

where said Boulevard formed the boundary of Lot two
(2) of Block fifty-four (54) ; that said dedication had been
accepted, and that the public and the inhabitants had con-
tinued to use and enjoy the rights and privileges so dedi-
cated; that upon the incorporation of the defendant as a
municipal corporation, under the laws of Florida; it suc-
ceeded to and held in trust for use and benefit of the
public, including the inhabitants of said municipality, the
rights so dedicated; that the chief commercial industry,
which for twenty years has been located in the City of
Tarpon Springs, was the sponge industry, the carrying on
of which had resulted in a great number of sponging
vessels bringing sponges from the Gulf of Mexico through
the Anclote River to use the shore space of the Anclote
River up to the edge of Anclote Boulevard in front of
Lot two (2) of Block fifty-four (54) in docking, loading
and discharging their cargoes, and that the public for a
long time had freely enjoyed access from the waters of
the Anclote River to and over Anclote Boulevard without
any attempt on the part of the Lake Butler Villa Com-
pany, William Powell Wilson, or the complainant to
deprive the public from the enjoyment of such rights; and
without any claim that any intervening strip of land pri-
vately owned existed, as asserted in the bill of complaint;
and that there had been no assessment of said intervening
strip for taxation, as alleged in the bill; that the com-
plainant asserted an adverse of estate, or interest in and
to the said shore space, riparian rights and right of access
which the deefndant held in trust as aforesaid, and
claimed to own in private ownership the strip of land in
the bill of complaint referred to; and that it was the pur-
pose and intent of the complainant, and those acting in
his behalf to undertake to cut off and deprive the public,
including the inhabitants of the City of Tarpon Springs

from the aforesaid shore, riparian rights and the right of access from Anclote Boulevard to and from the shores of the waters of the Anclote River in front of Lot two (2) of Block fifty-four (54), which had been dedicated to the public.

The said answer prayed for the following affirmative relief:

That the defendant be decreed to have and hold in trust for the public, including the inhabitants of the city, the dedication for street purposes of Anclote Boulevard in front of Lot Two (2) Block Fifty-four (54) of the town, as laid out upon the original map, and said street to have as its northern boundary the high water mark of the Anclote River, and the said city to be invested with and to have in trust for the public the dedication of all riparian rights in and to the shore space of the Anclote River in front where Anclote Boulevard forms one of the boundaries of said Lot Two (2) of Block Fifty-four (54), as well as of the free and unrestricted right of access from said boulevard for the said distance outward and over the shores and waters of said river to the channel thereof; that the adverse estate claimed by the complainant to the alleged strip of intervening land in the bill of complaint mentioned, be determined, adjudicated and declared to be without legal right or foundation and to be null and void; and that the complainant, his agents, servants and employees be perpetually enjoined and restrained from imposing any obstacle which would obstruct the free and unrestricted right of access by the public, and the inhabitants of the city, from Anclote Boulevard, where same forms the northern boundary of Lot Two (2) of Block Fifty-four (54) of the town, outward to and over the shores of the waters of the Anclote River to its channel.

Neither the propriety of having determined in the present suit the counter-claim set forth in the answer of the city, nor the defendant's rights upon the facts alleged to have the affirmative relief prayed for in its answer, was challenged by the complainants' motion to strike, or otherwise. And without any reply to the counter-claim embodied in the answer of the city, the cause was treated by the parties to the suit as being at issue upon the allegations contained in the bill and the answers, and testimony was taken upon the merits, and the cause submitted and heard, and final decree entered. The final decree, as originally entered, is:

"This cause coming on to be heard upon the pleadings heretofore had, the Lake Butler Villa Company having been by consent joined as a complainant with H. J. Smith, and upon the testimony as reported by the master, and having been argued by the solicitors for the respective parties and submitted to the Court, and the Court being advised of its opinion in the premises, it is ordered, adjudged and decreed that the equities are with the complainants and that the deed of conveyance, Exhibit 'C' to the bill of complaint, from the defendants, William Powell Wilson and Lucy L. W. Wilson, his wife, to H. J. Smith be reformed, as against the said defendants as well as against the defendant City of Tarpon Springs, so as to correctly and truly express the mutual intention of the parties by substituting for the words 'together with all the contiguous marsh on the Anclote River' the following words: 'Together with all the marsh on the Anclote River front contiguous to Lot Two of Block Fifty-four in the Town of Tarpon Springs as shown by the original map thereof, being the contiguous marsh on the Anclote River front mentioned in the deed of conveyance from the Lake Butler Villa Company to William

Powell Wilson and Jessie Wilcox Wilson, his wife; dated March 4th, 1884, and recorded in Deed Book 'P,' page 79, of the Public Records of Hillsborough County, Florida.'

" 'It is further ordered, adjudged and decreed that the equities are not with the defendant, City of Tarpon Springs, on its claim for affirmative relief as set forth in its answer filed in the above stated cause, and that the said claim of the defendant, City of Tarpon Springs for such affirmative relief be and the same is hereby denied and the said counter-claim is hereby dismissed.

" 'It is further ordered, adjudged and decreed that the defendant, City of Tarpon Springs, do pay all of the costs of these proceedings to be taxed by the Clerk of this Court.

" 'Ordered, adjudged and decreed in Chambers, at Bradentown, Florida, on this the 17th day of November, 1919.'

" 'O. K. REAVES, Judge.' "

The following is the "Amendatory Decree":

"This cause coming on to be heard upon the petition of the City of Tarpon Springs for a rehearing, upon consideration thereof it is ordered, adjudged and decreed that the said petition be and the same is hereby denied, upon modification of the decree heretofore rendered by adding thereto the following paragraph, which is to be taken and read as a part of the said decree, viz.:

" 'This decree is without prejudice to the rights of the City of Tarpon Springs as to that portion of the premises where the original plat of Tarpon Springs shows the northern boundary of Anclote Boulevard to be coincident with the southern boundary of Anclote River.'

" 'In denying relief to the City of Tarpon Springs under its counter-claim the court is of the opinion that under the original plat, where a space is shown thereon to intervene between the northern boundary of Anclote Boulevard as delineated thereon and the Anclote River, the property shown on the plat between such northern boundary and the Anclote River remained the private property of the Lake Butler Villa Company, and was not dedicated to the public. Where the northern boundary line of Anclote Boulevard is shown on the plat to be coincident with the southern boundary of the Anclote River the court is of the opinion that the case is within the rule announced in Brickell vs. Fort Lauderdale, 78 So., 681, but there is no definite evidence in the record to fix such location so that a decree might be rendered, and the prayers of the city's counter-claim relate to the entire premises.

" 'Ordered, adjudged and decreed in Chambers at Bradentown, Florida, on this the 16th day of December, A. D. 1919.

" 'O. K. REAVES, Judge. "

An appeal was taken in the names of all the defendants.

The *locus in quo* is claimed to be covered by a patent issued by the United States to the State of Florida under the swamp and overflowed land grant Act of Congress, approved September 28, 1850. The patent conveyed to the State "The whole fractional section twelve," township 27 south, range 15 east, "according to the official plats of survey." The official plat of survey shows that a portion of the said fractional section 12 is on each side of the Anclote River, and that between the meander lines in the section and the Anclote River there is considerable

marsh land. It further appears that the river flows from east to west through the north half of said section 12, and that the surveyed portions of the north half of the section is divided into lots. South of the river the lots are numbered 1, 2 and 3. Lot 1 contains 56.18 acres; Lot 2, 48.63 acres, and Lot 3, 51.80 acres. The surveyed portion of Section 12 on the north side of the river is a long narrow strip containing 17.84 acres. The south half of the section contains 323.16 acres. The entire surveyed area of the fractional section numbered 12 as shown "by the official plats of survey," aggregates 497.67 acres. As a full section usually contains about 640 acres of land, it thus appears that somewhat more than 140 acres of the section as meandered are unsurveyed and are covered by the waters of the Anclote River and by marsh lands, the latter being apparently the greater part of the unsurveyed space. The official plat of survey shows that there are perhaps more marsh land north of the river than south of it in Section 12. The claimant assumes that the patent conveyed to the State all the land in the section, including that covered by the meandered marsh on both sides of the river, and in effect claims that the State conveyed all of the lands, including the marsh lands, within Section 12 to his predecessor in interest. As presented, this appeal must be disposed of without adjudicating whether the patent conveyed the marsh lands to the State or whether the deed from the State through its agency covering "all of fractional section twelve," conveyed the title to the unsurveyed marsh lands in that section to its grantee, as the State is not a party to this suit, and is not represented on the record or by counsel.

· The following is Chapter 3941, Acts of 1889:

"AN ACT Declaring Anclote River Navigable.

*"Be It Enacted by the Legislature of the State of Florida:*

"Section 1.  From and after the passage of this Act the Anclote River, in the counties of Hillsborough and Pasco, shall be and is hereby declared navigable from the mouth of said river to where it is intersected by the line dividing Sections 1 and 2, in Township 27 S., R. 15 E.

"Sec. 2.  That it shall be unlawful for any person or persons to blockade or obstruct in any way said river.

"Sec. 3.  That all laws and parts of laws in conflict with the provisions of this Act are hereby repealed.

"Approved June 4, 1889."   Chap. 3941, Acts of 1889.

WHITFIELD, J.—In a suit between individuals for reformation of a deed of conveyance to include "all the marsh on the Anclote River front contiguous to lot two of block fifty-four, in the town of Tarpon Springs," the city was made a defendant, and by answer demanding affirmative relief under the statute, the city claimed a public easement over the marsh lands which lie between a dedicated street, "Anclote Boulevard," in the city and the line of the river as shown by the dedication map. As to this affirmative relief predicated upon averments of new matter, the city had the burden of proof.  See 16 Cyc. 401; Griffith v. Henderson, 55 Fla. 625, 45 South. Rep. 1003; 21 C. J. 577.  Neither the propriety nor the legal sufficiency of the counter-claim of the city as interposed in this suit was challenged.

The reformation was not resisted by the other defendants, the plaintiffs' grantors, and the chancellor decreed the reformation prayed, but denied the claim of the city to an easement in the premises.  On a petition for a

rehearing the chancellor amended the decree, making it "without prejudice to the rights of the City of Tarpon Springs as to that portion of the premises where the original plat of Tarpon Springs shows the northern boundary of Anclote Boulevard to be coincident with the southern boundary of Anclote River," the amendatory decree further stating that "there is no definite evidence in the record to fix such location (where the street and river lines coincide) so that a decree might be rendered, and the prayers of the city's counter-claim relate to the entire premises." On appeal the city alone contests the decree.

The dedication plat shows a space of considerable size, that includes the *locus in quo*, lying between a street of the city and the river, which space shown to be salt marsh more or less covered by growing vegation, is delineated on the plat by the north line of the street and the line that purports to show the south boundary of the river. The river is shown to be navigable and to be affected by the tides. At high tides the waters from the river cover some and perhaps nearly all of the lands referred to.

Chapter 3941, Acts of 1889, set out in the statement, declared Anclote River to be navigable from its mouth to the dividing line between Sections 1 and 12 in Township 27 South, Range 15 East, for the purpose of forbidding the river to be blockaded or obstructed. But the river is shown to be in fact navigable as it passes through Section 12, where the *locus in quo* is situated. The statute does not declare the river to be non-navigable above the point mentioned in the Act; and no intent appears in the statute to affect riparian rights above the point mentioned in the Act.

When by "Treaty of Amity, Settlement and Limits between the United States of America and the Kingdom

of Spain, concluded February 22, 1819, ratification exchanged at Washington, D. C., U. S. A., February 22, 1821, proclaimed February 22, 1821," there was ceded "to the United States, in full property and sovereignty, all the territories known by the name of East and West Florida," the United States took title to the lands under the navigable waters within the territory for the benefit of the national public, such lands to go to a future State embracing the territory for the use and benefit of all the people of the State. *Ex parte* Powell, 70 Fla. 363, 70 South. Rep. 392; Brickell v. Trammell, 77 Fla. 544, 82 South. Rep. 221; Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. Rep. 548.

The lands not under navigable waters that passed to the United States under the treaty were held for disposition by Congress. This includes swamp and overflowed lands within the territory ceded by Spain.

By an Act of Congress approved March 3, 1845, the State of Florida "was admitted into the Union on equal footing with the original States in all respects whatsoever." Thereafter the title to the lands *under navigable waters,* including the shore or space between ordinary high and low water marks, in the State, has been held by the State in trust for the use and benefits of its inhabitants, subject to the power of Congress in the premises, under the Constitution of the United States and to appropriate regulation by the State. State *ex rel.* Ellis v. Gerbing, 56 Fla. 603, 47 South. Rep. 353; Broward v. Mabry, 58 Fla. 398, 50 South. Rep. 826; Shively v. Bowlby, *supra;* Brickell v. Trammell, *supra;* Port of Seattle v. O. & W. Ry., — U. S. —, 41 Sup. Ct. Rep. 237, decided March 1, 1921. See also 153 U. S. 273 and 287; 138 U. S. 656, 671-2; 28 A. & E. Enc. Law (2nd ed.) 206; 27 R. C. L.

1330; 32 Fla. 64; 32 Fla. 82; 1 Farnham on Waters, p. 220.

While the navigable waters in the State and the lands under such waters, including the shore or space between high and low water marks, are held by the State for the purpose of navigation and other public uses, subject to lawful governmental regulation, yet this rule is applicable only to such waters as by reason of their size, depth and other conditions are in fact capable of navigation for useful public purposes. Waters are not under our law regarded as navigable merely because they are affected by the tides. The shore of navigable waters which the sovereign holds for public uses, is the land that borders on navigable waters and lies between ordinary high and ordinary low water mark. This does not include lands that do not immediately border on the navigable waters, and that are covered by water not capable of navigation for useful public purposes, such as mud flats, shallow inlets, and low lands covered more or less by water permanently or at intervals, where the waters thereon are not in their ordinary state useful for public navigation. See 32 Fla. 64, 76.

Lands not covered by navigable waters and not included in the shore space between ordinary high and low water mark immediately bordering on navigable waters, are the subject of private ownership, at least when the public rights of navigation, etc., are not thereby unlawfully impaired. Clement v. Watson, 63 Fla. 109, 58 South. Rep. 25. As to what may be included in a patent, see Lord v. Curry, 71 Fla. 68, 71 South. Rep. 21; Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. Rep. 124; Producers' Oil Co. v. Hanszen, 132 La. 691, 61 South. Rep. 754; Producers' Oil Co. v. Hanzen, 238 U. S. 325, 35 Sup.

Ct. Rep. 755; Chapman & Dewey Lumber Co. v. St. Francis Levee Dist., 232 U. S. 186, 34 Sup. Ct. Rep. 297; French-Glenn Live Stock Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. Rep. 563; 9 C. J. 182, 193.

In this case the land in controversy is claimed by the complainants to be covered by a patent issued by the United States to the State of Florida under the Act of Congress approved September 28th, 1850, granting to the State all swamp and overflowed lands in the State not theretofore disposed of by the United States. The patent includes "The whole of fractional section" 12, T. 27 S. R. 15 E., "according to the official plats of survey." These plats show considerable marsh land between the meander lines and the river, in section 12. The *locus in quo* is seemingly not embraced within the meander lines of the fractional section 12, portions of which section 12 lie on both sides of Anclote River, a narrow but navigable stream. The controversy is apparently concerning a part of the marsh lands between the meander line and the south side of the navigable river. Assuming this marsh land to be swamp and overflowed land within the meaning of the Act of Congress, and that the patent gave the State title extending over the marsh lands from the meander lines to the waters of the river bed, at a point where the State's title by virtue of its sovereignty to lands under navigable waters including the shore, reaches; and assuming, without deciding, that the conveyance by the State gave the title to its grantee covering the marsh lands to high water mark on the shore of the river bed, the rights of the city are to be determined by the dedication "map" or plat, if it substantially delineates the location of the body of the navigable stream with reference to the streets dedicated.

The State through its designated agency conveyed "all of fractional section twelve," T. 27 S. R. 15 E., to complainant's predecessor in claim of title. A subsequent grantee of the land included it in a "Map of the Town of Tarpon Springs, Hillsborough County, Florida," recorded in 1885. The map delineates lots and blocks and numerous streets, with one street marked "Anclote Boulevard," which is 40 feet wide and runs along a portion of the northern part of the town, where Anclote River is. At some places the north line of the boulevard for some distance coincides with or is merged into a line that indicates the south side of Anclote River. At other places the two lines denoting "Anclote Boulevard" depart towards the south from the delineated south line of the river, and after encompassing considerable spaces to the south of the river line with no designation on such spaces, the street lines turn to the north, and the north line of the boulevard again coincides with or becomes the same as the south line of the river, as it extends in a westerly direction.

The locus in quo is shown by the defendant city to be salt marsh with filled in places. It is represented on the dedication map as a space in irregular form between the designated north line of "Anclote Boulevard" and the delineated south line of "Anclote River." Apparently "Anclote Boulevard" was designed to run along the river side at some points; and to encircle considerable spaces leaving land in supposedly low places between the boulevard and the river line, at other points. The definitely outlined spaces thus shown by the dedication map to be intentionally left between the street and the river were obviously not dedicated expressly or as an incident to the street easement if the dedicator own such spaces. There is nothing on the map to indicate that at the dedication

the waters *of the body* of the river extended over the *locus in quo*. The dedication plat shows a canal running into the river through the space that includes the *locus in quo*, thus indicating the space to be low lands and not a part of the river bed. The fact that the spaces contain no numbers or other designations, indicates a reservation rather than a dedication. See Florida East Coast R. Co. v. Worley, 49 Fla. 297, 38 South. Rep. 618.

The dedicator conveyed the *locus in quo* to Wilson in 1884, who platted it showing the same spaces between the boulevard and the river, and this was done before the town was established, thus showing that the spaces were not intended to be included in the dedication. See Kirkland v. City of Tampa, 75 Fla. 271, 78 South. Rep. 17; City of Miami v. Florida East Coast Ry., 79 Fla. 539, 84 South. Rep. 726; Florida East Coast R. Co. v. Worley, *supra*. If the spaces are owned by the State, its title thereto is not affected by this suit. The city shows no authority to assert the rights of the State in lands covered by navigable and tide waters.

The dedication by the owner under the particular town plat, showing streets, etc., manifestly did not give any easement or other rights beyond the expressly designated limits of the streets and the incidents that are appropriate thereto. Wherever the street, Anclote Boulevard, as delineated by line and stated width, touches or approximately touches the body of the Anclote River, the riparian rights that are appropriate to a street easement were also impliedly dedicated as an incident, there being no express or implied reservation by the dedicator of such riparian rights. See Brickell v. Town of Fort Lauderdale, 75 Fla. 622, 78 South. Rep. 681.

An easement in the marsh lands including the *locus in quo*, lying between the specifically designated north line of Anclote Boulevard and the line indicating the open body of Anclote River, obviously was not by the use of this particular map or plat dedicated to the city. A right to use such marsh lands for purposes of access to the river did not pass as incidental to the dedicated street. Riparian rights generally are incident to a street easement only when and at the points where the street, by express provision or by intendment, extends to a navigable body of water. In this case, there are no express terms or intendments to extend the location or the width of the street beyond the line definitely fixed; and where the designated north line of the street does not extend to or approximately to the river, as shown by the dedication plat, no easement was dedicated over the space on the plat between the designated north line of the street and the line indicating the body of the river. The fact that the spaces are covered by tide waters or by the waters of the river at high water periods does not give an easement over the land, under this dedication plat, even if high water extends to the boulevard as indicated. It does not appear that any rights in the wide spaces between the designated lines of Anclote Boulevard and the body of the river were granted or dedicated to the public or to the city. Nor does it appear that the space including the *locus in quo* is in fact a part of the main body of the navigable river. On the contrary, a canal running through the space into the river indicates low lands, not the river bed.

The city shows no rights superior to those accorded by the dedication. Affirmative relief was sought by the city through its answer as is permissible under the statute. Chap. 6907, Acts 1915.

It is assumed but not decided that the dedicator owned the *locus in quo* and also the land dedicated for the street easement. The State is not prejudiced by the decree herein. There is no sufficient definite data as to the places where the north line of the street and the south line of the river coincide, so that a decree may be rendered on that point; therefore the amended decree properly made the adjudication of the rights of the other parties to be without prejudice to the city as to the points where the said street and the river lines do coincide.

Affirmed.

TAYLOR, ELLIS AND WEST, J. J., concur.

BROWNE, C. J., concurs in the conclusion.