100 So.2d 192 (1958)
Elmer E. FEIG and Dora A. Feig, his wife, Appellants,
v.
W.R. GRAVES and Bonnie A. Graves, his wife, Helen V. Bateman Palmer, and Felix E. Reifschneider, Appellees.
No. 273.
District Court of Appeal of Florida. Second District.
February 12, 1958.
*193 Robert D. Timson and Herschel O. Moats, Orlando, for appellants.
James K. Rush, of Anderson, & Rush, and Richard B. Keating, Orlando, for appellees.
SHANNON, Judge.
The appellees were the plaintiffs below and the appellants were the defendants. The plaintiffs filed a complaint seeking a declaratory judgment as to the rights of the parties in respect to the land and waters adjacent to the eastern boundary of Bass Lake, and an injunction to prohibit the defendants from interfering with the rights possessed by the plaintiffs.
After the answer had been filed and the evidence taken, the final decree was entered by the Chancellor in favor of the plaintiffs. It is from this decree that the defendants appealed.
A plat of Rest Haven was filed with the Clerk of the Circuit Court of Orange County, Florida, on January 2, 1926. A portion of Bass Lake is included within the boundaries of the subdivision. Blocks E and F of Rest Haven (wherein are located the residences of the plaintiffs) are separated from Bass Lake by a strip of land shown on the plat as a "walk", the lakeside boundary of which forms an irregular line coinciding at all points with the shoreline of Bass Lake. The width of this walk is indicated at two points on the plat to be 10'±.
In recent years the waters of Bass Lake have receded with the result that the shoreline of the lake lying within the boundaries of the plat of Rest Haven has likewise receded 70 or 80 feet from its former position as shown on the plat recorded in 1926.
In 1946 defendants secured from the sole survivor of the original owners and subdividers of Rest Haven a quitclaim deed to:
"All that part of Bass Lake lying West of Blocks E and F, of Rest Haven Subdivision, according to plat thereof recorded in Plat Book M, Page 67, of the Public Records of Orange County, Florida, and East of the West line of the E 1/2 of NW 1/4 of SW 1/4 of Section 5, Township 23 South, Range 30 East, and lying North and West of Michigan Avenue."
Subsequent to securing this deed, the defendants claimed exclusive ownership and right of enjoyment of the land lying between the present shoreline of Bass Lake and the shoreline as it existed in 1926. *194 Thus, they began interfering with plaintiffs' enjoyment of the same property. Plaintiffs assert that the walk situated between Bass Lake and Blocks E and F was placed in that position by the subdivider so that access to the lake could be had and that when the waters of the lake receded from their former level, the lakeside boundary of the walkway followed the receding shoreline so as to continue to give effect to the purpose for which the walk was created.
At one time plaintiffs took the position that as owners of lots adjacent to the walk, they were vested with riparian rights in Bass Lake; however, they now concede that they would not be vested with riparian rights simply because their lots were adjacent to the walkway. They claim that such rights are attached to the walk which they are authorized to enjoy by reason of the fact that the walk was shown in the plat recorded in 1926. They claim that the riparian rights are attached to the walkway and are, thus, subject to the use and enjoyment of all those entitled by recordation of said plat. The defendants concede that riparian rights attached to Walk No. 1 (their designation of the walk between Blocks E and F) as extended to Bass Lake and that the plaintiffs and public generally have the right of access to the lake over this walk. They take issue with the plaintiffs in the latter's assertion that Walk No. 2 (their designation of the walk running between Bass Lake and Blocks E and F) was so located by the subdivider so as to give access to the lake.
The lower court, in its final declaratory decree, found that "the shore line of Bass Lake is a boundary of the walkway in controversy"; the "water boundary line was not intended to be a permanent fixed line but one that would vary from time to time according to the gradual but constant and expected changes in the lake"; "the intent of the * * * grantors * * * was that the walk-way be bounded by the waters (sic) edge and that it should continue to be so bound"; the "walk-way has been enlarged by the accretion or reliction and extends to the receded water, and Plaintiffs have a right and easement in said walk-way as a means of access to the waters of Bass Lake"; and that "although riparian rights do not attach to the respective parcels of land owned by the individual Plaintiffs, riparian rights do attach to the above described walk-way and such rights are subject to the use and enjoyment of all those entitled to the use of the * * * walk-way." It was decreed that defendants acquired by virtue of the quitclaim deed fee simple title to the land described therein subject only to the above described walkway easement and the riparian rights which attach thereto, but with the proviso that the fee simple title to the land over which the walkway extends is vested in the respective abutting lot owners down to the center line of the walkway as that center line varies from time to time.
The decree concluded by permanently enjoining the defendants from interfering with plaintiffs' enjoyment of the easement over the walkway and the riparian rights attaching thereto.
The defendants have assigned nineteen assignments of error but, in the final analysis, we may divide the opinion in this case in two parts taking up in Part I, plaintiffs' rights in the easement and in Part II, ownership of the fee subject to the easement.

Part I  Extent of Plaintiffs' Rights in Easement
Plaintiffs are seeking a declaratory decree adjudicating their "private" rights in an interest, which has been defined to be "in the nature of an implied easement" and an injunction to secure to them the enjoyment of these rights. Neither the plaintiffs nor defendants have placed in evidence the fact that Bass Lake is a navigable body of water and so, in this opinion, Bass Lake will be dealt with as non-navigable.
In their brief appellants' main contentions are:
*195 (1) It is unreasonable to conclude that the dedicator intended the easement to be bounded by the waters of Bass Lake. They reinforce their argument by setting forth the meaning to be attached to the symbol ± and point out the unreasonableness of holding that 10' ± could mean as much as 66' to 91';
(2) The burden of an easement upon the servient estate must not be increased to a greater extent than reasonably necessary and contemplated at the time of its inception; and
(3) The decree, since it is vague and uncertain as to the "walkway in controversy", does not advise the defendants with what rights of plaintiffs they are enjoined from interfering. (Defendants conceded that plaintiffs could have access to Bass Lake over the walk between Blocks E and F. The only walkway in controversy therefore, is the one running between Blocks E and F and Bass Lake.)
The walk situated between Blocks E and F and Bass Lake was offered for dedication to public use in the owner's certificate on the recorded plat of Rest Haven Subdivision. There was no evidence of an acceptance of the offer of dedication; however, it is not necessary for the plaintiffs, who purchased, or their predecessors in title purchased, lots in Blocks E and F, to prove that the offer of dedication was accepted before they can assert their right to use the walkway for the purpose intended by the original owners and subdividers. "The platting of land and the sale of lots pursuant thereto creates as between the grantor and the purchaser of the lots a private right to have the space marked upon the plat as streets, alleys, parks, etc., remain open for ingress and egress and the uses indicated by the designation, but that, so far as the public is concerned, such acts amount to a mere offer of dedication which must be accepted before there is a revocation to complete the dedication. * * *" City of Miami v. Florida East Coast R. Co., 1920, 79 Fla. 539, 84 So. 726, 729. The rights acquired by purchasers of lots under a plat are described as "private" rights in the nature of implied easements, existing independently of any public rights arising out of a dedication. Mumaw v. Roberson, Fla. 1952, 60 So.2d 741.
The original owners and subdividers intended that the western boundary of the walkway should be the water's edge of Bass Lake, even though, subsequently, the level of the lake might rise or fall. His intent is evidenced by an examination of the plat which reveals that (1) the water or western boundary of the walk is indicated by an undulating line which, at all points, coincides with the eastern perimeter of the lake, and (2) the width of the walk is expressed as 10' ± instead of a definite or fixed number of feet.
The walk was located so as to provide property owners in Rest Haven a means of access to the waters of Bass Lake. The water boundary is evidence of such an intent, as well as the recitation in some of the deeds from the subdivider conveying lots in Rest Haven that the property was being sold subject to the restriction that "riparian rights to Bass Lake granted all lot owners in Rest Haven."
A dedicator may reserve all riparian rights appurtenant to the land encumbered by the easement dedicated. Florida East Coast Ry. Co. v. Worley, 1905, 49 Fla. 297, 38 So. 618. Riparian rights were not reserved in the case at bar. In the absence of such a reservation whether these rights are included within the scope of a "dedication" depends upon the purpose for which the easement was granted and the location of the property burdened with the easement. In City of Tarpon Springs v. Smith, 1921, 81 Fla. 479, 88 So. 613, at page 621, involving the extent of a street easement which ran adjacent to a river in places and away from it in others, it was stated:
"* * * Riparian rights generally are incident to a street easement only *196 when and at the points where the street, by express provision or by intendment, extends to a navigable body of water * * *" (although the Court had under consideration a street easement  not a walk  adjacent to a navigable body of water. There is no reason for a contrary rule if the easement borders a non-navigable body of water, of course, assuming that the dedicator is vested with riparian rights.
The Court in affirming the decree of the Court below held that:
"* * * Wherever the street, Anclote boulevard, as delineated by line and stated width, touches or approximately touches the body of the Anclote river, the riparian rights that are appropriate to a street easement were also impliedly dedicated as an incident; there being no express or implied reservation by the dedicator of such riparian rights." (Citation omitted.)

Part II  Ownership of the Fee Subject to the Easement
As set forth in Part I the presumed intention of the original owners was that the easement of the walkway be bounded on the east by Blocks E and F, and on the west by the waters of Bass Lake. In 4 Fla. Jur., Boundaries, Section 8, this rule is stated:
"Generally speaking, the margin or bed of a stream or other body of water constituting a boundary continues to be the boundary notwithstanding any accretion or erosion which changes the location of the body of water; the boundary line of a tract of land thus located on the margin or bed of a stream or body of water extends or restricts as that margin gradually changes or shifts by reason of accretion or erosion."
Plaintiffs' predecessors in title acquired the fee in the land subject to the easement to the center thereof. In the absence of evidence to the contrary, the abutting property owner is presumed to own the soil to the center of the highway or street subject to the easement in favor of the public. State Road Department v. Bender, 1941, 147 Fla. 15, 2 So.2d 298. Since the easement was of indefinite width and subject to change depending upon the level of the lake at a given time, it follows naturally that the location of its center would necessarily vary accordingly. While plaintiffs' ownership to the center of the underlying fee would remain constant, the distance from plaintiffs' lots to the center of the easement would not.
Plaintiffs' fee ownership in the land subject to the easement is not increased by application of the laws of reliction. As far as can be determined from the record the waters of Bass Lake receded while defendants' predecessor in title owned the entire lake bottom, as well as the west one-half of the fee in the easement. Therefore, all lands uncovered by the recession of the Lake were within the boundary of defendants' predecessor's property. Plaintiffs' increased quantity of fee ownership in the land subject to the easement results from their acquisition of lots abutting on the easement and the presumption mentioned above. See Banks v. Ogden, 1865, 2 Wall. 57, 69 U.S. 57, 17 L.Ed. 818, for its dictum bearing on the point made in this paragraph.
We, therefore, must conclude that the lower court was correct in applying the rules that we have set out, and the decree should be affirmed.
Affirmed.
KANNER, C.J., and ALLEN, J., concur.