157 So.2d 150 (1963)
PETER B. CARTISH AND JOHN C. PURCELL AND ETHEL D. PURCELL, HIS WIFE, APPELLANTS,
v.
JOHN E. SOPER AND JEWEL SOPER, HIS WIFE, APPELLEES.
No. 3809.
District Court of Appeal of Florida, Second District.
November 1, 1963.
John C. Dew and John D. Harris, Jr., of Harris, Barrett, Dew & Sieber, St. Petersburg, for appellants.
Stephen D. Hughes of Thompson & Hughes, Largo, for appellees.
ALLEN, Judge.
Appellants herein were defendants in the lower court, and the appellees were plaintiffs below. Plaintiffs brought a class action in chancery, asking the court to declare the rights of the parties to a certain platted "Private Parkway," to enjoin defendants from obstructing plaintiffs' free use of all parts of said parkway, and to enjoin defendants from objecting to the plaintiff subdivision owners' application and right to rebuild a dock extending from the parkway. From an adverse decision, the defendants appeal.
Jungle Shores No. 6 is a subdivision in Pinellas County platted in 1925. The plat, herein reproduced, shows a strip of land 40 feet wide running between Pelham Road and the waters of Boca Ciega Bay in St. Petersburg, which strip is denoted "Private Parkway."
*151 
*152 With respect to said "Private Parkway," the plat states:
"The tract of land marked `Private Parkway' on this tract, being a strip of land 40 feet wide extending from the east boundary line of Lots 39 and 40 extended to the waters of Boca Ciega Bay, bounded on the north by Lot 40 and on the south by Lot 39, is not dedicated, nor is the same for public use, but the same is expressly reserved as a private parkway or passageway for all purchasers of lots in said subdivision and the members of their respective families, each owner having an easement of passage for ingress to and egress from the waters of Boca Ciega Bay, which said easement shall run with the land and pass unimpaired to subsequent purchasers of any or all lots in the said subdivision as appurtenant thereto, and shall under no circumstances or conditions be separated from the ownership of a lot or lots therein."
The appellant Purcell owns lot number 39, which borders the platted "Private Parkway" on the south side, and appellant Cartish owns lot numbered 40, which borders the said "Private Parkway" on the north side. Fee to the "Private Parkway" was originally held by the First National Bank of St. Petersburg, as Trustee, but after numerous conveyances through the years, finally came into the hands of appellant Cartish, who then conveyed the fee to the south half of the "Private Parkway" to appellant Purcell. Appellant Purcell then planted decorative shrubbery on portions of the "Parkway." This action, and the action of appellant Cartish in successfully resisting appellees' attempt, as Chairman of a property owners organization, to build a dock extending from the Parkway into the Bay, provided the impetus and content of the suit below.
Upon hearing testimony and having viewed the property, the chancellor entered a final decree, the salient portions of which provided:
"That such plat does reserve as a `Private Parkway' for the use of the lot owners in the subdivision of Jungle Shores #6 that part and portion bounded on the north by lot 40, bounded on the south by lot 39, bounded to the east by Boca Ciega Court (now known as Palham [sic] Road) and bounded to the west by the waters of Boca Ciega Bay, and that the plaintiffs as owners of lots in said subdivision were and are vested with the right to use said described area jointly and in common with each other and with all lot owners in said subdivision;
"That the reservation in the plat of Jungle Shores #6 * * * constituted the granting of an easement vesting all property owners of said plat with an easement for the common use of said parcel and part of land as a private parkway for ingress to and egress from the waters of Boca Ciega Bay;
"That the reservation of the private parkway by the platters of Jungle Shores #6 is not a dedication to the public at large but an easement created and granted to the then and all subsequent property owners of the plat;
* * * * * *
"That defendants, by reason of their fee simple ownership to the private parkway or otherwise, have no right to plant any shrubs, hedges, trees or other plantings within the limits of the private parkway, or to in any other manner obstruct, withdraw or withhold from the other lot owners in the subdivision the joint and common use of any part of the private parkway;
"That the owners of lots in said subdivision have the right to post a sign or signs on the private parkway to indicate that the same is for the use of *153 the property owners, and families thereof, of the subdivision only;
"That riparian rights were included within the scope of the reservation of the private parkway for the owners of lots in the subdivision and that riparian rights were impliedly reserved as an incident thereto;"
This decree concluded by granting the relief sought, including an injunction against obstructing the Parkway with shrubbery, or obstructing construction of the dock and an order directing removal of shrubbery theretofore planted. Appeal ensued.
Two questions are presented on appeal; the first questions the propriety of that portion of the order concerning shrubbery as an obstruction to the use of the Parkway. Briefly, appellants argue that the specification of a 40 foot width for the Parkway is merely descriptive of the tract over which the easement runs and that appellants did not impair the easement so long as they in no way prevented access to the Bay. They rely on Robinson v. Feltus, Fla. 1963, 68 So.2d 815, and indirectly on Powers v. Scobie, Fla. 1952, 60 So.2d 738.
In the latter case the Supreme Court affirmed a decree denying strict enforcement of a platted easement upon which the appellee had encroached. The plat had dedicated a divided boulevard with two 15½ foot lanes and a reserved center aisle. Appellee had encroached upon one of these lanes. In affirming the lower court, the Supreme Court pointed out that, even with the encroachment, a 31 foot way existed and that a mere redelineation of the street would leave appellant's rights unimpaired. This result, effecting no reduction in the width of the easement and the fact of numerous other distinctions in the Powers case, renders it of no comfort to appellants here.
Similarly, the Robinson case, involving as it did significantly different language whereby a lease conveyed certain property "together with an easement over the south 12' * * *." adjacent property, is distinct and distinguishable from the instant case. While the Court in Robinson was undoubtedly correct in finding that the 12 foot width was merely descriptive of a tract of which necessary portions were to be used exclusively by the easement owner, the same conclusion cannot be reached under the vastly different and less ambiguous language of the instant case.
Recalling that the Court in the Powers case recognized that the problems of alleged easement encroachments must be resolved on the facts of each case and upon consideration of the facts in the case sub judice, the chancellor's determination must be sustained.
There remains the question of riparian rights, whether incident to the easement or to the fee.
In response to appellees' prayer for a declaration of rights in the easement, the able chancellor determined that riparian rights were implicit in the easement rights reserved to the benefit of appellees. Appellants contend that this was error and argue that the riparian rights are owned by the owners of the fee. Briefly, appellants argue that the "Parkway" is a private easement and was not dedicated to the public, that easement rights can only arise by express grant, by clear implication or by prescription and that none of these sources of rights are found in the instant case. Appellees respond with reliance upon this court's opinion in Feig v. Graves, Fla.App. 1958, 100 So.2d 192, which appellants argue is distinguishable on several grounds.
Conceding that the Feig case is factually distinguishable, the language therein would encompass the instant case. Proceeding from the premise, admitted by appellants, that easement rights may be created by implication, it is clear that such riparian rights necessary and incidental to access and egress from the Bay were implicit in the reservation of the Parkway. Just as accreted land would necessarily be burdened by the easement as a necessary *154 implication of the reservation, so too the right to build a dock to facilitate access to the waters is implied.
Accordingly, insofar as riparian rights are necessary to or consistent with the purposes of the easement, they are impliedly granted to appellees and, as a corollary, reserved from the appellant fee owners. Cf. Feig v. Graves, supra; City of Tarpon Springs v. Smith, 1921, 81 Fla. 479, 88 So. 613; Geigor v. Filor, 1859, 8 Fla. 325.
We find no error in the lower court's decree.
Affirmed.
SMITH, C.J., concurs.
WHITE, J., concurs specially.
WHITE, Judge (concurring specially).
The principal opinion affirms the appellees' easement rights and riparian privileges as determined by the chancellor. I apprehend that the opinion also implicitly recognizes that these rights and privileges are shared or held in common by the appellees and the appellants by virtue of their ownership of lots in the subdivision without reference to seisin of the land affected by the easement. In other words, these rights, limited to the purposes for which the easement was established, accrue alike to appellants and appellees as members of the private community served by the easement, and the parties may not exercise their mutual rights in derogation of each other. Wilson v. Dunlap, Fla. 1958, 101 So.2d 801, 804-805; Taylor v. Tampa Coal Company, Fla. 1950, 46 So.2d 392.
The prime relief sought by the appellees as plaintiffs below was to keep open the corridor to the waters of Boca Ciega Bay and to secure a declaration of approval of their asserted right to construct a dock, and this was the specific relief granted. Thus a determination of what other riparian rights belonged to the appellants as owners of the fee underlying the easement was not necessary. This case differs from those wherein the relief sought requires the separation and allocation of riparian rights among several adverse claimants. 56 Am. Jur., Waters, § 252.
Although riparian rights generally attach to the fee, ownership of the fee is not a necessary condition precedent to riparian rights. 56 Am.Jur., Waters, § 283. See e.g. Tarpon Springs v. Smith, 1921, 81 Fla. 479, 88 So. 613.
There is no doubt that all the easement beneficiaries are entitled to the open corridor, but I have been dubious about that portion of the decree favoring the construction of a dock. Upon further consideration my doubts in this connection have been allayed by the fact that the easement was served by such a facility until 1940 or 1941, when apparently it succumbed to the elements, and also by the fact that the language of the grant or reservation broadly provides for the right of ingress and egress to and from the waters of Boca Ciega Bay. I take it that unless all the interested parties agree, no commercial activity would be involved in the use of any dock that might be constructed.