VILLAGE OF PEWAUKEE, Respondent, vs. SAVOY and another,
Appellants.

*April 26 — May 16, 1899.*

*Waters: Raising level of lake: Title to submerged lands: Estoppel: Dedi-*
*cation: Highways: Riparian rights.*

1. Submerged lands of meandered lakes within the boundaries of this
   state belong to the state in trust for public use substantially the
   same as submerged lands under navigable waters by the rules of
   the common law, and the state cannot part with such title to the
   detriment of such trust.
2. The title of the state to submerged lands under the waters of navi-
   gable lakes will be extended so as to include lands covered by an
   artificial raising of the level of the lake, if such artificial condition
   be continued so long as to become the natural condition.
3. If a person artificially raise the level of the waters of a navigable
   lake so as to flood his own lands, the public rights in the lake will
   be correspondingly extended so long as such artificial condition
   exists.
4. If a person flood his own land by artificially raising the level of the
   waters of a navigable lake and maintain that condition for more
   than twenty years, and the public use and enjoy the lake in such
   new condition, the title to such lands, so far as necessary to main-
   tain such condition, will vest in the state by dedication. In such
   circumstances the artificial condition of the lake will be considered
   its natural condition, with all the incidents thereof.
5. If a public street or highway exists so that its boundary line and the
   waters of a navigable lake meet, the riparian rights incident to
   the land composing the street belong to the public. In such a situ-
   ation there is no zone of private right between the street and the
   lake, but the public right is continuous from the street to the
   waters of the lake and from the waters of the lake to the street.
   [Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Wauke-
sha county: JAMES J. DICK, Circuit Judge. *Affirmed.*

Appeal from a judgment restraining defendants from
placing a fence along the street line to obstruct the passage
therefrom to the adjoining waters of Pewaukee lake. It

was claimed by defendants that the land from the street line back some distance into the lake, reaching to where the water came in a state of nature, was private property; that though such land had been submerged for a long term of years by an artificial raising of the lake level, the owner had a right to reclaim the land and exclude the public from passing over it to the line of the lake level as it existed in a state of nature. Plaintiff commenced the action on the theory that, though the land immediately outside of the street line originally was not lake bottom and but for the artificial raising of the lake would belong to defendants, such artificial condition had permanently established a new level reaching to the street line, so that what was formerly private property between such line and the line of the lake bottom became the property of the state the same as the lake bed in its natural condition. The cause of action and right to relief depended on whether the artificial raising of the lake and the maintenance of it for a long term of years extended the public ownership of submerged lands, so as to include that which was thereby, but was not formerly, covered by water. The issues raised by the pleadings were decided substantially as follows:

(1) Pewaukee lake, a meandered, navigable body of water, about five miles long and averaging about three-fourths of a mile wide, commonly used by the public for boating and fishing since prior to 1873, is situated within the boundaries of plaintiff, a duly incorporated village under the laws of this state.

(2) Main street, a much used public thoroughfare in the village, is located in part along the east end of the lake so that its submerged land reaches the line of the street on the west side thereof.

(3) Upwards of twenty years prior to the commencement of this action the water of that part of the lake on the west side of the street, between an iron stake near Savoy's hotel

and Desso's blacksmith shop lot, has continuously flowed, naturally, to the street line, and the street has been in constant use as a thoroughfare for public travel in reaching the lake, by all persons desiring to enjoy the common rights therein.

(4) On the 19th day of June, 1896, the trustees of the village, by ordinance duly passed according to the laws of this state, established that portion of the lake bordering on the street as aforesaid as a harbor for all kinds of craft used in navigating the lake, and provided for the regulation of docks, wharves, and boat houses in and at such harbor.

(5) March 30, 1898, defendants constructed a barb-wire fence along the street line on the lake front within the territory above indicated, so as to wholly obstruct public travel from the street to the lake and from the lake to the street, which fence was removed by the village authorities, but would have been restored and the public way permanently obstructed had defendants not been enjoined by the court in this action from so doing till the rights of the parties could be judicially determined.

(6) The level of the water in the lake was artificially raised, about 1838, by a dam which forms the street within the points mentioned, which condition has since existed substantially without change, by means of which the disputed strip of land along the lake front, bounded on the east by the west line of the street, which was formerly dry land, has since been covered by water.

(7) The trustees of the village authorized the commencement of this action.

From the aforesaid facts the court found the public rights in the lake between the points mentioned reached the boundary of the street, no private zone separating the two, and that plaintiff was entitled to a permanent injunction restraining the defendants from interfering with the public travel to and from the lake or the navigation of the lake

within such territory.   Judgment was entered accordingly, from which this appeal was taken.

*T. W. Haight,* for the appellants.

For the respondent there was a brief by *Ryan & Merton,* and oral argument by *T. E. Ryan.*

MARSHALL, J.   It is the settled law that submerged lands of lakes within the boundaries of the state belong to the state in trust for public use, substantially the same as submerged lands under navigable waters at common law.   Upon the admission of the state into the Union the title to such lands, by operation of law, vested in it in trust to preserve to the people of the state forever the common rights of fishing and navigation and such other rights as are incident to public waters at common law, which *trusteeship is inviolable,* the state being powerless to change the situation by in any way abdicating its trust.   *Priewe v. Wis. S L. & I. Co.* 93 Wis. 534; *Willow River Club v. Wade,* 100 Wis. 86; *Illinois Cent. R. Co. v. Illinois,* 146 U. S. 387–452; *Shively v. Bowlby,* 152 U. S. 1; *Revell v. People,* 177 Ill. 468.

The title of the state to submerged lands, and the inviolability of the state's trustee relation thereto, as indicated, is not questioned by appellants, but it is contended, as regards the lake in question, that the state's title is limited to lands that were covered by water before the lake level was artificially raised; that though the artificial water line now reaches the street, there is a strip of submerged land between that and the boundary of the former lake level, conceded to belong to defendants if their theory of the law is correct, to which the state has no title and which they have a right to reclaim from its artificial condition and to exclude the public therefrom.   So the primary question upon which the appeal really turns is, Has the maintenance of the artificial level of the lake for upwards of twenty years given to the new level, as regards title to submerged lands, all the char-

acteristics of a natural lake to the same extent? The trial court answered that in the affirmative. No other conclusion could have been reached consistent with recent decisions of this court on the same subject. In *Smith v. Youmans*, 96 Wis. 103, it was held that an artificial condition of a watercourse or body of water, maintained for such length of time as to confer the right by prescription to maintain it permanently, is to all intents and purposes the natural condition. That was a case of the artificial maintenance of an artificial lake level for more than twenty years substantially the same as in this case. True, the ultimate question for decision was, Has a riparian proprietor, in the circumstances mentioned, the right to insist upon the artificial level of the water being maintained? but the conclusion was reached as a deduction from the general principle that an artificial condition of a body of water, maintained for more than twenty years under such circumstances as to extinguish the right of the owners of land affected by it to object to its continuance, becomes its natural condition with all the incidents thereof. The same subject was before the court again in the very recent case of *Mendota Club v. Anderson*, 101 Wis. 479. True, the question there was whether the common rights of fishing and navigation extended correspondingly to an artificially increased level of the lake that had been maintained for about half a century, and it was decided in the affirmative. But as in *Smith v. Youmans*, the result was reached as a deduction from the principle that an artificial condition, by lapse of time, under such circumstances as were shown, becomes the natural condition. Having determined the governing legal principle, it was said in the first case that riparian rights must be determined with reference to the artificial level the same as if it were the natural level; and in the last case that the right to fish and hunt and navigate must be determined with reference to the artificial condition, the same as if it were the natural condition; and in this case the

Village of Pewaukee vs. Savoy and another.

court held that the title to the bed of the lake must be determined with reference to the artificial level of the water the same as if it were the natural level. It can easily be seen that each conclusion was a logical result of the existence of the principle common to all. There is no escaping that. If the principle is right the results followed necessarily. When we say that the new level of the lake has become its natural level, we say that the title to all the submerged lands in the present condition of things is in the state; that the entire body of water is subject to the common right of fishing and navigation and to the other incidents of navigable waters, and that the title to lands bordering on the lake stops at precisely the same line that would govern if the water, in a state of nature, reached to the height of its artificial condition.

The above-stated principle having been, upon due consideration, firmly declared to be the law, on the several occasions indicated, it is sufficient now to refer to our previous adjudications without rediscussing the subject at length or reviewing the holdings of other courts. Our attention is called to some authorities to the effect that mere permissive use by one or several persons of the property of another, however long continued, will not take the title of the latter and vest it in the former. That doctrine is familiar, but we fail to perceive its application to this case. The land in controversy here was artificially taken into the lake by the owner about the time the land was acquired from the United States in 1839, and its condition in that regard has been since maintained by those in the chain of title from the original owner down to about the time of the commencement of this action. When the owner of the land raised the lake level so as to cover it, such land immediately became subject to use by the public as a part of the natural lake bed, not by permission of the owner of the paper title, but by the same right that the public used any other part of the lake. The owner of

the land possessed no right to exclude the public therefrom so long as the waters of the lake were caused to flow over the same. The principle is well settled that if the volume or expanse of navigable waters be increased artificially, the public right is correspondingly increased. *Whisler v. Wilkinson,* 22 Wis. 572; *Volk v. Eldred,* 23 Wis. 410; *Weatherby v. Meiklejohn,* 56 Wis. 73; *Smith v. Youmans,* 96 Wis. 103; *Mendota Club v. Anderson,* 101 Wis. 479. As the chief justice put it in the *Mendota Club Case,* the public may use the increased volume of water the same as though it had always been in that condition; that the right existed from the start. So long as the artificial condition existed, the person holding the title to submerged lands could not exclude the public therefrom.

It is not difficult to see how a person who, by artificial means, makes his land a part of the bed of a navigable lake so that the water flowing over the same is rightfully used as a part of the public waters and continues that situation for a long time, loses the right to change the condition. The creation of the condition, knowing that the public will have a right to enjoy it, necessarily carries with it a presumed intention that they shall enjoy it. A person is presumed to intend the natural consequences of his deliberate acts. A situation once created and continued for such length of time that it would be considered a violation of good faith to the public for the person responsible for it to change his position and restore the original situation, brings into play the principle of estoppel *in pais,* which precludes him from revoking what is legally considered a dedication of his land affected by his acts, to the public use. 3 Washb. Real Prop. 79. Riparian proprietors may make nonnavigable waters, even, public waters by dedication. *Yates v. Judd,* 18 Wis. 118. Uninterrupted and continuous use, acquiesced in for twenty years, constitutes conclusive proof of dedication. *Lemon v. Hayden,* 13 Wis. 159; *Wyman v. State,* 13 Wis. 663.

Village of Pewaukee vs. Savoy and another.

It does not militate against the effectiveness of acts to creat∍ a right to land by dedication that the owner does not so intend, if such be the legal effect of his conduct. *Williams v. Smith*, 22 Wis. 594. Applying those principles to the facts of this case, it is easily seen that the conduct of the owners of the property in dispute in this case, in maintaining an artificial condition of the waters of Pewaukee lake for some fifty years, which they knew gave to the public the right to enjoy it as a natural condition, hence intended that such should be done, and the use accordingly, operated most effectively to dedicate all lands owned by them affected by such condition to the public use, and to surrender to the proper custodian of lands devoted to such use the title necessary to maintain and protect it. There is no taking of lands for public use contrary to the will of the owner without just compensation in the circumstances of this case, but a mere acceptance of lands voluntarily surrendered to the public use by the owner, which surrender, by reason of the facts, the owner is precluded from revoking or interfering with, so that, as a consequence, in effect at least, the title to the lands is vested in the state to the same extent as that of lands constituting the original natural bed of the lake.

It follows from the foregoing that the public right to the bed of Pewaukee lake, within the limits affected by the judgment appealed from, reaches to the line of the street; and it necessarily follows that defendants have no right, by reason of a qualified title to the street on the side toward the lake, if they have such qualified title, to claim riparian rights as an incident thereto. In such situations the wharfing privileges and other incidents of the shore are appurtenant to the public right in the street, leaving no line of paramount private right between the street and the water. Said Justice MATTHEWS, in *Potomac S. Co. v. Upper Potomac S. Co.* 109 U. S. 672: "It never was questioned that, as to streets whose termini abutted on the river, the water front was subject to

the riparian rights of the public for use as wharf, dock, or landing places." 'And the same rule applies to a situation where the street line and the water line coincide. The true inference to be drawn from so locating a street is that it was intended to secure to the public those very rights, and to prevent private monopoly of the landing places for trade and commerce.' To the same effect is *Rowan's Ex'rs v. Portland*, 8 B. Mon. 232, where it was held that if a street line and the line of a navigable river coincide, the wharfing privileges are in the public to the exclusion of the original proprietor. Likewise, in *People v. Lambier*, 5 Denio, 9, it was held, in effect, that where a public street connects with navigable waters, the fact that the fee of the street is in private hands does not permit the taking, by reason of private ownership, of land beyond the original street boundary for private purposes; that the result of a filling up beyond the original terminus of the street will be to extend the street correspondingly so as to preserve the right of public passage from the water to the street and from the street to the water. In *Barclay v. Howell's Lessee*, 6 Pet. 498, a claim inconsistent with the foregoing was thus repudiated: To contend that between the boundary of a street and the public right to navigable water, where the two meet, as in case of the existence of a street bounded by a navigable river, a private right can exist and be exercised hostile to the public right, is unreasonable and against law. For further authorities on the subject, see *Newport v. Taylor's Ex'rs*, 16 B. Mon. 699; *Barney v. Keokuk*, 94 U. S. 324; *New Orleans v. U. S.* 10 Pet. 662; *Godfrey v. Alton*, 12 Ill. 29; *Backus v. Detroit*, 49 Mich. 110.

A suggestion is made in regard to the right of the village corporation to maintain this action. That subject is covered by *Madison v. Mayers*, 97 Wis. 399, and many previous cases in this court. A municipality may maintain an action for an injunction to prevent interfering with its streets. There

are many instances in our reports where the right to maintain such actions has been sustained. *Neshkoro v. Nest*, 85 Wis. 126; *Jamestown v. C., B. & N. R. Co.* 69 Wis. 648; *Oshkosh v. M. & L. W. R. Co.* 74 Wis. 534; *Waukesha H. M. S. Co. v. Waukesha*, 83 Wis. 475; *Eau Claire v. Matzke*, 86 Wis. 291. The question seems to have been so completely foreclosed as not to be open to discussion. The right to maintain the action is based on the duty of the municipality to maintain its streets in a proper condition for public travel. By subd. 11, sec. 893, Stats. 1898, village corporations are expressly empowered to prevent the obstruction of their streets. That has been held to carry with it by implication the right to maintain an action for injunctive relief as an appropriate means for carrying out the express power. *Buffalo v. Harling*, 50 Minn. 551. Standard text writers support the same doctrine. Beach, Injunctions, §§ 1284, 1285. It applies here, as the real purpose of this action was to prevent threatened obstruction to the proper use of a street.

What has been said seems to cover all questions of sufficient moment to require special mention in this opinion.

*By the Court.*— The judgment of the circuit court is affirmed.