156 So.2d 408 (1963)
FLORIDA POWER CORPORATION, Appellant,
v.
Tyrus Eugene HICKS and Clara Jeanette Hicks, his wife, Appellees.
Nos. 3479, 3480.
District Court of Appeal of Florida. Second District.
August 9, 1963.
Rehearing Denied October 1, 1963.
Erskine W. Landis of Hull, Landis, Graham & French, Deland, and Edgar H. Dunn, Jr., St. Petersburg, for appellant.
G. Andrew Speer, Sanford, for appellees.
GERMANY, JOHN, Associate Judge.
This is two appeals, one from a Final Decree, the other from a cost judgment *409 entered against appellant, Florida Power Corporation, which was plaintiff in the lower court.
In 1951 an easement was granted to plaintiff across a triangular shaped lot of the size 231.02' x 325.5' x 399.2', in the city of Longwood, Florida. The consideration for the easement as shown on its face was under $100.00. By this easement, the plaintiff was granted:
"the right, privilege and easement to construct, operate and maintain for such period of time as it may use the same or until the use thereof is abandoned, a single pole line for the transmission and distribution of electricity, including necessary communication and other wires, poles, guys, anchors, ground connections, attachments, fixtures, equipment and accessories desirable in connection therewith over, upon and across the following described land in Seminole County, State of Florida, to wit:
"Lot 6 of Molnair (sic) Addn. to Longwood in the NE 1/4 of NE 1/4 of Section 6, Township 21S, Range 30E, provided that clearing of trees is limited to 50 feet on either side of power line.
"together with the right to patrol, inspect, alter, improve, repair, rebuild or remove such lines, equipment and accessories, including the right to increase or decrease the number of wires and voltage, together with all rights and privileges reasonably necessary or convenient for the enjoyment or use thereof for the purposes above described, including the right to trim, cut and keep clear such trees, limbs and undergrowth along said lines, and all trees adjacent thereto that may endanger the proper operation of the same and including the reasonable right to enter upon adjoining lands of the grantors for the purpose of exercising the rights herein granted.
"The grantors covenant that they have the right to convey the said easement and that the grantee, its successors and assignees shall have quiet and peaceable possession, use and enjoyment of said easement."
In 1952, defendant purchased the property subject to the easement. In August, 1952, plaintiff had constructed a pole designated as WO-263, which was supported by four guy wires, three of these which ran in a westerly direction and one in a southeasterly direction, all located on the said easement. In August, 1952, the north 15 ft. of Lot 6, Molnar Addn. to Longwood was conveyed by the defendants to Seminole County. It was on this north 15 ft. that pole WO-263 and the three westerly guys were located, leaving only the southeasterly guy on the property of the defendants. In January, 1953, defendants completed the construction of a home on the subject land.
The base or the northern line of the defendants' triangular lot fronts on Molnar Street which is also State Road 434. This street is the traffic route to several golf courses in the area and with the construction of Interstate 4, it has also been designated as one of the access roads. In the middle of 1960, to take advantage of this traffic, the defendants started construction of a small filling station which faces Molnar Street. In front of the filling station lay the southeasterly guy supporting pole WO-263. Defendant requested plaintiff to relocate the guy, which request was refused. Defendant continued with the construction of the filling station and plaintiff brought suit seeking to enjoin the construction on the theory that the operation of such a business adjacent to a power line would constitute a dangerous and hazardous operation and, in addition, that it would violate the plaintiff's rights and materially impair and be an unreasonable burden on the plaintiff's rights.
A temporary injunction order was issued upon the condition that the plaintiff file a bond in a penal sum of $7,500.00, which was to pay to the defendants all cost and damages as would be incurred or suffered by them having been wrongfully enjoined *410 or restrained by the issuance of the temporary injunction.
Defendants answered the complaint and filed a counterclaim seeking a mandatory injunction to require the plaintiff to relocate the southeasterly guy so as not to interfere with or obstruct the proposed driveway of the filling station of defendants.
The cause finally came on to be heard before the Chancellor and after a protracted hearing, the Chancellor entered a Final Decree which decreed that the temporary injunction be dissolved and that court costs and damages be assessed against the Plaintiff. The Final Decree further required the plaintiff to remove the southeasterly guy running from pole WO-263 but allowed the relocation to some other position on Lot 6 of Molnar Addn. to Longwood, so long as the new location did not interfere or obstruct the flow of vehicular traffic in the proposed driveway of defendants' filling station. It further allowed the defendants to proceed with the construction and operation of their filling station with the condition that the construction conform with the plans entered into evidence of the proposed layout of "Service Station for Tyrus Hicks, Longwood, Florida."
Subsequently, there was a judgment entered which assessed costs against the plaintiff in the amount of $1,492.80 for Sheriff's services, expert witness fees and court reporter, together with the sum of $7,500.00 for damages in favor of the defendants and against the plaintiff and its surety company. It is from this Final Decree and Judgment that the plaintiff appeals.
The easement in this cause being in general terms, the original grantor had the right to designate the location. As he failed to do so, it became the right of the owner of the easement to select the location, limited by the rule that the location must be a reasonable one as to both the dominant and servient estate in view of all circumstances and such as not unreasonably to interfere with the enjoyment of the servient estate.
In 1952, the easement became fixed upon the location of the pole and guys. The record does not show any complaint by the servient owner of the location but affirmatively shows that the servient owner constructed a dwelling on this property subsequent to the location of the pole and guys. For some eight years, defendants acquiesced in this location but then a change of circumstances now causes them to request the relocation of the southeasterly guy.
Easements once granted and fixed are not subject to the whims of either the dominant or servient owners of the land and can only be changed by the mutual consent of the parties.
As stated in 17A, Am.Jur., Page 713, Section 103:
"The general rule is that the location of an easement once selected cannot be changed by either the land owner or the easement owner without without (sic) the others consent. The reason for this rule is that treating the location as variable would incite litigation and depreciate the value and discourage the improvement of the land upon which the easement is charged."
The law of change applies equally to both the servient and dominant owners. In the case of Capital Electric Power Association v. Hinson, 226 Miss. 450, 84 So.2d 409, on page 413 the power company sought to extend an existing easement over the land of the servient owner which the court denied, and in so doing, said:
"The appellant was not granted an unlimited right to use the lands of the grantor; and what we here hold is to permit such reasonable use to be made of the servient lands as to accomplish that which the parties contemplated at the time of the grant, as evidenced by what the owner of the easement did *411 pursuant to the grant within a reasonable time thereafter, with the acquiescence of the landowner. It would not be consistent with established law to permit the owner of the easement to make extensions of its right of way whenever new conditions or demands for its services require additional use of the servient lands; for to do so would subject the servient lands to potentially unlimited future burdens, the extent of which would never be fixed. Such unlimited right was not expressly granted, and on sound principle, we should not so interpret them to inhere in the general grant."
So here, it would not be consistent with the established law to allow the servient owner to require the easement owner to make changes in a fixed easement by removing the southeasterly guy. To do so, would violate the covenant of the easement which the original grantors gave allowing the grantee power company "peaceable possession, use and enjoyment of said easement."
To sustain the decree of the lower court, the Appellee has cited cases where minor modifications are allowed, but no property rights are involved such as here. This vital distinction is shown in the case of Youngstown Steel Products Co. v. City of Los Angeles, 103 A.C.A. 453, 229 P.2d 814, cited by Appellee. In this case there was a general easement to "locate and maintain power poles with all necessary wires and fixtures thereon," to which an additional phrase was added "for aerial only," which additional phrase was found by the court to be entirely repugnant to the original grant. Power lines without benefit of pole, were located across the land of the servient owner at a certain height. Due to change in circumstances, the power wires, according to the contention of the servient owner, had to be heightened to enable the servient owner to have the reasonable use of his estate. The court, in its opinion, cited the general rule as stated in 17A, Am.Jur., Page 713, Section 103, Supra, and followed by the California courts, but in allowing the height change, drew the distinction between easements for aerial use only and easements which actually used specific portions of the grantor's land.
The ruling of the Chancellor that equity has the power to modify an easement grant where a property right is involved is in error and, for this reason, the cause must be and the same is hereby reversed.
The opinion in the cost judgment was based upon the defendant successfully resisting the injunction proceeding of the power company and this being no longer the case, the cost judgment also fails and that judgment be and the same is hereby reversed.
The causes are hereby reversed and remanded for further proceedings consistent with this opinion.
ALLEN, Acting C.J., and SHANNON, J., concur.