156 So.2d 752 (1963)
Oliver C. BURKART and Mabel C. Burkart, husband and wife, Appellants,
v.
CITY OF FORT LAUDERDALE, a municipal corporation, Appellee.
No. 2273.
District Court of Appeal of Florida. Second District.
October 9, 1963.
*753 J.B. Patterson, Fort Lauderdale, for appellants.
Francis K. Buckley, Fort Lauderdale, for appellee.
SMITH, Chief Judge.
Appellants, Oliver R. Burkart and wife, appeal from a final decree, entered after *754 hearings on the merits, dismissing their complaint and denying them the relief sought. Their complaint alleges that they are the owners of two parcels of property in Idlewyld Subdivision in the City of Fort Lauderdale. Parcel A consists of ten lots in the subdivision, and the plaintiffs allege that it was made to appear from the subdivision plat that these lots have attached thereto riparian rights across and into New River Sound extending to the channel. These lots face east and abut the west side of a street designated as Ocean View Drive. The plaintiffs further allege that they are the owners of Parcel B, which is described as "that parcel of land bounded on the west by Ocean View Drive, on the north by Las Olas Boulevard, and on the east and south by the waters of New River Sound." From the descriptions of the two parcels, it is seen that Ocean View Drive intervenes between the parcels, with Parcel B lying east of Parcel A. The complaint further alleges that New River Sound is a navigable body of water in which the tide ebbs and flows; and that under the provisions of the Riparian Rights Act of 1856, and amendatory and supplementary statutes enacted thereafter, the plaintiffs have the right to fill in said submerged land lying in front of Parcel B to the channel without obstructing the channel. The complaint prays that the plaintiffs be declared the owners of the two parcels, free and clear of any claim, right or title of the defendant; and that the defendant City be enjoined from asserting or claiming any right, title or interest in and to Parcel B and all the submerged land situated between Parcel B and the channel of New River Sound that lies in front of Parcel B.
The City's answer denies that the plaintiffs own any land described as Parcel B and denies that the plaintiffs own any riparian rights on account of their ownership of Parcel A, except such as they may share in common with the general public. Further answering, the City alleges that at the time of the dedication of the plat there was no land lying between Ocean View Drive and the waters of New River Sound, but that said street abutted the waters to the east; and that pursuant to its charter, the defendant City has the power to regulate and control all the streets, waterways and public ways within the City limits, and has adopted ordinances regulating and governing the public way. The City's answer did not contain any counterclaim or prayer for affirmative relief.
Upon the issues so joined and after lengthy delays,[1] the evidence was taken before the court and submitted on final hearing. Thereafter, the court entered its extensive and most comprehensive findings of fact and law, pursuant to which there was subsequently entered a final decree denying the plaintiffs the relief they sought and dismissing the cause.
The parties admit that at the time of the filing of the plat the subdivider owned a parcel of land located on New River Sound, a navigable body of water in which the tide ebbs and flows, and that appurtenant and incident to said land there existed riparian rights. In 1921, the owner recorded a subdivision plat of the land, which plat contained a dedication with pertinent portions as follows:
"* * * The riparian rights in and to the waters of New River and New River Sound opposite each lot or parcel of land fronting or abutting upon Ocean View Drive are hereby reserved to the New River Development Company, its successors, legal representatives or assigns, owners of said abutting lots or parcels of land. The streets, avenues and Ocean View Drive, shown hereon are hereby dedicated to the perpetual use of the public as thoroughfares, reserving to the New River Developing Company, its successors, *755 legal representatives or assigns, the reversion or reversions thereof, whenever discontinued by law."
A photographic reproduction of the recorded plat, depicting the area in controversy, is as follows:

*756 The plaintiffs' rights accrued to them by virtue of mesne conveyances from the subdivider to the plaintiffs. The description used in each conveyance from the subdivider was in the following form:
"Lot numbered ____ of Block numbered ____ of THE NEW RIVER DEVELOPMENT COMPANY'S Subdivision of IDLEWYLD, as same is shown, marked and designated on a plat of said subdivision recorded in Plat Book No. 1, at page 19, in the office of the Clerk of the Circuit Court in and for Broward County, Florida."
In a subsequent, numbered paragraph under a heading to the effect that "this conveyance is made subject to the following restrictions and limitations," there appears the following:
"The strip or parcel of land lying between Ocean View Drive and New River Sound and New River, in front of each lot fronting on Ocean View Drive is hereby conveyed to the owner, of said lot together with such riparian rights and privileges as are owned by the New River Development Company, * * *"
By a series of subsequent conveyances originating from the subdivider, there were separate deeds purporting to convey a "strip or parcel of land" lying in front of Parcel A and describing such strip or parcel as being situated between Ocean View Drive and New River Sound.
The rights of the City to the area in question accrued to it by virtue of the plat of the subdivision.
The court found that there is intrinsic evidence in the plat itself from which the true intention of the maker can be almost conclusively established  at least more certainly than the statements of witnesses testifying after a lapse of nearly twenty years, since such testimony is subject to mistakes caused by defective memory and the confusion of after-acquired information or later impressions with memory. The Chancellor noted that the maker of the plat showed no land east of the street boundary, and it was found that the wavy lines on the plat did not indicate land east of the street, but to the contrary, indicated that the street abutted upon the waters of New River Sound. The court concluded that the easterly boundary of Ocean View Drive, as shown on the plat, was intended to be and was the waters of New River Sound; that if any deposits have accumulated against Ocean View Drive, such accumulations are a part of the dedicated street; and that there was the possibility (noted as an interesting point not pursued by the parties) that the riparian rights claimed by the plaintiffs are subordinate to or limited by the riparian rights appurtenant to the County public road known as East Las Olas Boulevard, because that road was established by deed prior to the recording of the plat. There is substantial, competent evidence in the record to sustain these findings.
Drawing the several parallel, wavy lines abutting and adjacent to the east side of Ocean View Drive, as shown on the plat, is the usual means employed to mark a water boundary where tides ebb and flow. The record contains the uncontradicted testimony of experts to the effect that these wavy lines are standard engineering symbols indicating a water boundary. Where such lines are found on a plat, they should be taken to define a lot or street lying adjacent to the water, with nothing between, in the absence of anything appearing to the contrary on the plat. Brickell v. Town of Fort Lauderdale, 1918, 75 Fla. 622, 78 So. 681. The plat here discloses nothing to the contrary. The solid, heavy line marking the east boundary of Ocean View Drive is clearly for the purpose of showing the distance from the west line of the Drive to the water. The wavy, undulating lines adjacent to the solid line, and touching the solid line from time to time with insignificant variations, make it clear that Ocean View Drive was dedicated and platted as extending to the shore of New River Sound. *757 There is indicated, on the face of the plat, an intention to dedicate all land between the west boundary of the street and the water.[2] The testimony of the witnesses to the contrary was properly rejected by the Chancellor for the very cogent reasons stated. The conclusion that Ocean View Drive abuts the shore of New River Sound is further fortified by the admitted fact that the subdivider first filed the plat and then filled the land and constructed the Drive. Although the plat indicates that the width of Ocean View Drive, at the time of its platting, was fifty feet, the fact that its eastern boundary was the shore of New River Sound dictates that the width would vary from time to time as the shore would vary by accretion or erosion, so that any deposits of land on the shore become a part of the dedicated right of way for the Drive. See Backus v. City of Detroit, 1882, 49 Mich. 110, 13 N.W. 380, and cases there cited. The finding that no land existed between Ocean View Drive and New River Sound removes the questions of law here involved from the principles stated in Caples v. Taliaferro, 1940, 144 Fla. 1, 197 So. 861, and Marshall v. Hartman, 1932, 104 Fla. 143, 139 So. 441, because in each of those cases there was land intervening between the dedicated easement and the public waters.
The plaintiffs' remaining contention is that, even if there is no land intervening between the public street and the public waters, they have, by virtue of their ownership of the subdivision lots abutting upon Ocean View Drive, riparian rights appurtenant thereto, and the City and the general public which the City represents have no riparian rights. In considering the question presented, the facts must be viewed in the light of the following well-established principles of law: A deed which describes property by reference to a plat makes the plat as much a part of the deed as if it were actually copied in the deed. Andreu v. Watkins, 1890, 26 Fla. 390, 7 So. 876. A plat should be construed against the subdivider who created the plat and chose the words and symbols contained therein. Servando Building Co. v. Zimmerman, Fla. 1956, 91 So.2d 289. In the event the plat is ambiguous, the construction must be against the dedicator and in favor of the public. Florida East Coast Ry. Co. v. Worley, 1905, 49 Fla. 297, 38 So. 618. A conveyance of land abutting on a public street which is shown on the plat of the lands normally carries the fee to the center of the street, subject to the dedicated right of way. Seaboard Air Line Ry. v. Southern Inv. Co., 1907, 53 Fla. 832, 44 So. 351; Smith v. Horn, 1915, 70 Fla. 484, 70 So. 435. A dedication of lands for public street purposes, absent a clear intent to the contrary, does not divest the owner of title, but only subjects the land and the title to the easement; and if the easement is lawfully terminated, the title of the land remains in the dedicator or his successors in interest, free and clear of the easement. Robbins v. White, 1906, 52 Fla. 613, 42 So. 841; New Fort Pierce Hotel Co., for Use of Carlton v. Phoenix Tax Title Corp., 1936, 126 Fla. 552, 171 So. 525.
In Caples v. Taliaferro, 1940, 144 Fla. 1, 197 So. 861, and in Caples v. Taliaferro, 1940, 144 Fla. 30, 197 So. 872, the Supreme Court was considering the issue of who owned certain submerged lands situated in front of uplands, where there was an intervening strip of land which had been dedicated as a walk. In these companion decisions the Court discussed at length the question of the rights of the owner of the upland property. The court stated that it could "find no quarrel" with the appellees' contention that:
"* * * [W]hen a street or highway is platted on the margin of the *758 grantor's land, a conveyance of the lands bordering the street carries the fee to the entire width of the street unless expressly reserved * * *." (144 Fla. at 3-4, 197 So. at 862)
Of course, the question faced in the Caples v. Taliaferro cases is not identical to the instant question, and the specially concurring opinions and dissents render the holdings therein uncertain; therefore, the court's approval of the quoted rule is clearly dicta.[3] A federal court has construed the Caples decisions as "approving" the rule in Florida.[4] Whether those decisions so hold or not, the rule is sound in principle. See Johnson v. Grenell, 1907, 188 N.Y. 407, 81 N.E. 161, 13 L.R.A.,N.S., 551; Gifford v. Horton, 1909, 54 Wash. 595, 103 P. 988; Taylor v. Armstrong, 1863, 24 Ark. 102; 8 Am.Jur., Boundaries, § 43.
In Marshall v. Hartman, 1932, 104 Fla. 143, 139 So. 441, 446, the court discussed the question of the riparian rights of an upland owner where a public street intervened between the land of the upland owner and a body of water. However, this phase of the matter was concluded with the court's statement to the following effect:
"But we do not deem it necessary, for reasons hereinafter stated, to determine the very interesting questions presented in connection with the contention of appellants that the complainant failed to prove that defendants did not have riparian rights. * * *"
This statement renders the discussion of that subject dicta.
We are of the view that the record here establishes that, by virtue of their ownership of the lots fronting on Ocean View Drive, the plaintiffs own the fee underlying the Drive across its entire width. By the plat, Ocean View Drive was dedicated to the perpetual use of the public as a thoroughfare. The conveyances from the subdivider to the plaintiffs did convey the reservation, contained in the dedication, of the reversion or reversions of the dedicated public thoroughfares, whenever discontinued by law.
The question then remains as to whether or not the plaintiffs' ownership of the underlying fee in Ocean View Drive vests them with all riparian rights to the exclusion of any riparian rights accruing to the easement for the dedicated street. Although we are aware of decisions to the opposite effect,[5] we are of the opinion that the better and majority view is that, where a street is laid out so that it is bounded on one side by navigable waters, the dedication of the street to the public operates to relinquish to the public, and to merge in the public right, the dedicator's individual right of access to the open navigable waters in front of the dedicator's uplands. See McCloskey v. Pacific Coast Co., 9 Cir.1908, 160 F. 794, 799-800, 22 L.R.A.,N.S., 673, where some of the pertinent authorities are reviewed as follows:
"In Barclay v. Howell's Lessee, 6 Pet. 498, 512, 8 L.Ed. 477, it is declared that, if a street as laid out is bounded by a navigable river, it is limited on that side only by the public right:
"`To contend that between its boundary and the public right a private *759 and hostile right could exist would not only be unreasonable, but against law.'
* * * * * *
"In Village of Pewaukee v. Savoy, 103 Wis. 271, 79 N.W. 436, 50 L.R.A. 836, 74 Am.St.Rep. 859, it was held that, if a public street exists so that its boundary line and the waters of a navigable lake meet, the riparian rights incident to the land composing the street belong to the public, and there is no zone of private right between the street and the lake, but the public right is continuous from the street to the waters of the lake. * * *
"In Rowan's Ex'rs v. Portland, 8 B.Mon. (Ky.) 232, it was held that, if the street line and the line of a navigable stream coincide, the wharfing privileges are in the public to the exclusion of any private right of that nature in the proprietor on the landward side of the street. * * * [Citations omitted]
"The doctrine * * * rests upon the theory that the private right of access has been merged in a public right which is inconsistent with its exercise, and, in the application of the doctrine, it is immaterial whether the title to the intervening street is vested in the public or remains in the adjacent owner. Barney v. Keokuk, 94 U.S. 324 339, 24 L.Ed. 224. In Backus v. Detroit, 49 Mich. [110] 115, 13 N.W. [380] 382 (43 Am.Rep. 447), Judge Cooley said:
"`The common law of dedication would be sufficient to estop the owner from setting up any claim, or asserting any right to the prejudice of the easement.'"
In Geiger v. Filor, 1859, 8 Fla. 325, the court was determining the validity of a franchise, granted by the City of Key West to a private citizen, to erect a wharf which abutted the end of a city street and extended therefrom into the public waters. The facts of that case disclose that, in laying out the City, certain streets were shown on the plat; but there was no specific dedication. The owner of all the lands conveyed the fee of the street, subject to the public easement, to the plaintiff, who subsequently brought suit to enjoin the erection of the wharf. The court held that the owner of the underlying fee was not a riparian owner within the meaning of the Riparian Rights Act of 1856;[6] that, as part of the public easement, there existed the right of ingress and egress which commences from the public street abutting the water and extends in, to and over the water and the submerged lands thereunder; and that there is an interest remaining in the vendee of the original owner of the town, that the owner of land over which the street passes retains the fee and all rights of property not incompatible with the public easement, and only when the street is abandoned or lost does it become his original, unencumbered dominion. The court cited with approval, and quoted extensively from, many of the authorities reviewed in McCloskey v. Pacific Coast Co., supra, and then quoted from Godfrey v. City of Alton, 1850, 12 Ill. 29, 52 Am.Dec. 476, as follows:
"* * * When an easement is granted to the public upon the margin of a navigable stream, the right to use and treat it as a landing is undoubted. Having dedicated the banks of the river, this united the two easements each of which was essential to the full enjoyment of the other. The proprietors had no interest in the bed of the stream which they could reserve to the prejudice of the enjoyment of the public easement over it."
We conclude that the decision in Geiger v. Filor, supra, is determinative of the case *760 at bar. The plaintiffs' ownership of the underlying fee in Ocean View Drive does not vest them with riparian rights to the exclusion of the riparian rights accruing to the easement for the dedicated street; but to the contrary, there exists as a part of the dedicated public street riparian rights appurtenant to a street easement, which riparian rights continue until the public easement is lost or abandoned. As was noted in Geiger, such was the common law of England; and it is the law in most American jurisdictions, as is evident by the authorities accumulated and cited in McCloskey v. Pacific Coast Co., supra. It is interesting to note that, although one citation varies,[7] the authorities cited with approval in Geiger are substantially the same authorities reviewed in McCloskey, all of which were the early American decisions establishing the now great weight of authority in this country, constituting the precedent for the conclusion we reach.
This conclusion is further fortified by the decision of the Florida Supreme Court in Brickell v. Town of Fort Lauderdale, 1918, 75 Fla. 622, 78 So. 681. In that case, the court not only had and determined the issue of whether or not the streets had a river boundary, but further determined that, since the streets did have a river boundary, the riparian rights attaching to the streets accrued to the public and were not reserved to the owner of the fee in the streets. Although no reference is made to Geiger or McCloskey, the court quoted with approval from Rowan's Executors v. Town of Portland, supra, and other decisions cited in Geiger and McCloskey. In explaining its decision the court in Brickell said (75 Fla. 622, at 632, 78 So. at 684):
"The courts have frequently said, and we find the same expressions in the text-books, that it is `inconceivable' and `preposterous' to contend that a town would be located on the banks of a navigable river and the inhabitants deprived of the right of access to the river."
We are aware also of the court's additional statements (75 Fla. at 632-633, 78 So. at 684):
"We do not say that the owner of land desiring to lay off a city through which flows a navigable river might not do this, and in effect erect a barrier on each bank of the stream and cut off intercourse between the two sections of the city, but the unreasonableness of such a plan for a city, and the improbability of one so situated becoming populated, is so great that such intention on the part of the dedicators would have to be very clearly established before it should be accepted by the courts, and where there is any doubt as to such intention it should be resolved against it. As was well said in the case of City of Denver v. Clements, 3 Colo. 484:
`If there exist an actual intent to reserve any portion of the lands so platted into streets, otherwise than by express reservation on the plat, certainly it should be made manifest in some manner, not only of equal certainty, but of equal publicity as the plat, otherwise an actual intent cannot be permitted to avail against an intent on which the law will and must insist, as being shown by unequivocal act upon which the public had a right to rely.'"
We reject the appellants' contention that the facts here meet the exceptional situation foreseen by the court in Brickell. Moreover, the above-quoted statements were not directed to an issue before the court at that time; such statements were clearly side comments constituting dicta.
*761 The facts in this case are distinguished from those in City of Tarpon Springs v. Smith, 1921, 81 Fla. 479, 88 So. 613. The court there found that the definitely outlined spaces shown by the dedication plat were intentionally left situated between the street and the river, and were obviously not dedicated expressly or as an incident to the street easement. It was particularly noted that the plat showed a canal running through a portion of the space. However, the court did state that where the street, which was delineated by a line and by a marked width, touched or approximately touched the river, then the riparian rights appurtenant to a street easement were also impliedly dedicated as an incident thereto, there being no express or implied reservation by the dedicator of such riparian rights.
As was noted in Wilson v. Dunlap, supra, the decisions in City of Tarpon Springs v. Smith, Brickell v. Town of Fort Lauderdale, and Marshall v. Hartman, all supra, would prevent or severely restrict the exercise of littoral rights by an upland fee owner where there was an intervening easement for street purposes. A different rule was applied in Feig v. Graves, Fla.App. 1958, 100 So.2d 192, where the court was dealing with the dedicated walkway that separated a lake from upland owners.
The words on the face of the plat, dedicating the Drive as a public thoroughfare and reserving riparian rights, when considered in the light of all of the circumstances here, are clearly inconsistent; therefore, the plat and its dedication must be construed in favor of the public and against the reservation by the subdivider and his successors in title. Powers v. Scobie, Fla. 1952, 60 So.2d 738. For the reasons herein enumerated, the dedication of Ocean View Drive, which abuts upon public waters, must be construed as operating to relinquish to the public, and to merge in the public right, the dedicator's individual riparian rights to the navigable waters. It would be unreasonable and contrary to law to permit a private right to exist which could be exercised hostilely to the public right.
The decree is affirmed.
SHANNON, J., concurs.
WHITE, J., dissents.
WHITE, Judge (dissenting).
With due respect I think the majority opinion affirms a misapplication of the doctrine of merger to effect a divestiture and transfer of reserved property rights. My views on this point may be developed more clearly by a preliminary restatement of the case.
On February 18, 1921 the owner of lands, now owned in part by the plaintiff-appellants, filed a plat from which it appears that one of the lateral boundaries of a dedicated public road easement coincides exactly with the highwater mark of a navigable waterway while the underlying fee remains in the owner-dedicator's chain of title with riparian rights expressly reserved. This unusual coincidence was a continuing invitation to conflict, setting the stage for the present clash between easement and fee with respect to riparian rights. That portion of the upland that lies between the road and the water is "new" land apparently formed by accretion since the 1921 dedication. The land is in the corporate limits of the defendant City of Fort Lauderdale. This court is in agreement on some aspects of the case, but we are not in accord on how to dispose of the knotty question of riparian rights. There appears to be no reported Florida decision precisely in point on the facts.
Plaintiffs filed their quiet title suit February 27, 1946, with particular reference to the accreted waterfront land lying along the roadway and allegedly appurtenant to plaintiffs' lands hereinafter described. The City of Fort Lauderdale was named defendant. After fourteen years of pleading, stipulating and taking of testimony, a *762 final decree of dismissal was entered November 22, 1960 in effect in favor of the defendant city which had asserted controlling rights in the subject tract by reason of the road easement.
The plaintiffs, alleging ownership of Lots 1, 2 and 3 in Block 12 of Idlewyld Subdivision, claimed ownership also of the aforesaid tract lying east of said lots and bounded on the west by Ocean View Drive and easterly and southerly by the waters of New River Sound, together with all riparian rights and privileges. In other words, the plaintiffs asserted ownership and riparian rights with respect to the land formed by accretions and deposits lying easterly across Ocean View Drive opposite their Lots 1, 2 and 3 of Idlewyld Subdivision.
It was on the aforesaid date of February 18, 1921 that New River Development Company, owner of the immediate area at that time, caused the lands to be platted as Idlewyld Subdivision.[1] The street or road delineated as "Ocean View Drive" lies east of plaintiffs' Lots 1, 2 and 3 and west of New River Sound, and this is the road for which the easement was given. The marginal inscription, which is clear and unequivocal, is here repeated:
"* * * The riparian rights in and to the waters of New River and New River Sound opposite each lot or parcel of land fronting or abutting upon Ocean View Drive are hereby reserved to the New River Development Company, its successors, legal representatives or assigns, owners of said abutting lots or parcels of land. The streets, avenues, and Ocean View Drive, shown hereon and hereby dedicated to the perpetual use of the public as thoroughfares, reserving to the New River Development Company, its successors, legal representatives or assigns, the reversion or reversions thereof, whenever discontinued by law." (Emphasis supplied)
New River Development Company constructed streets, pavements and sidewalks and sold lots according to the plat. The plaintiffs in their complaint traced title to Lots 1, 2 and 3 and, as stated, asserted title to the accreted tract and claimed the right to fill the submerged lands appurtenant thereto without obstructing the navigable channel. In the deraignment of title it appears that riparian rights were granted by a chain of conveyances culminating in the deed to the plaintiffs.
By letter prior to plaintiffs' suit the city disputed plaintiffs' ownership of the land bordering the water and insisted that by reference to the 1921 plat there was no "upland" between the water and the east line of Ocean View Drive; that the east line of Ocean View Drive was, in fact, identical with the waterline. The city then adopted a resolution of intent to regulate the activities of persons attempting to use the water adjacent to every public street in the city. The plaintiffs thereupon brought suit and sought, inter alia, to enjoin the city from asserting any title or riparian rights with respect to the land in question.
The city's answer denied plaintiffs' claim of ownership and asserted, as previously indicated, that according to the records the involved upland was not there when the subdivision was platted; and the city claimed for itself the ownership of the road and of the increment between it and the water by reason of the dedication. The city also claimed riparian rights with reference to the submerged lands under Section 271.09, F.S.A.[2]
The plaintiffs undoubtedly own the fee, but I agree that it would be inconsistent *763 with the easement to permit the plaintiffs to fill the submerged land. The decree, however, goes further. It denies plaintiffs all riparian privileges incident to the reservation of rights and, in effect, confers the totality of such rights upon the city. See footnote 4, infra. In this connection it is apparent that the city's position hinges entirely on the dedication of Ocean View Drive according to the plat. There was no other form of grant. Pertinent portions of the city's answer are as follows:
"(12) * * * Land deposits formed in New River Sound along the eastern boundary of said street at the point lying east of said Lots 1, 2 and 3 of Block 12 of Idlewyld, and the ownership of such land deposits and increments became vested in Defendant City of Fort Lauderdale, as trustee for the public, by virtue of its ownership of said street, and said Defendant City * * * became entitled to the riparian rights in and to the submerged lands * * *." (Emphasis supplied)
The amended answer alleges:
"(7) * * * Defendant * * * admits that its said claim is predicated partly upon the effect of the recorded plat of IDLEWYLD * * *
* * * * * *
"(12) * * * Defendant City of Fort Lauderdale, as Trustee for the Public, became the owner of said street by virtue of said dedication * * *" (Emphasis supplied)
From the above quoted portions of the answer, it would seem that the city's position was based on the misconception that it owned the street, rather than an easement, by virtue of the dedication.
A dedication of land for public street purposes, absent a clear contrary intent, does not invest the owner of the title but only subjects the land and the title to the easement; and if the easement is lawfully terminated the title to the land remains in the dedicator or his successors in interest, free and clear of the easement. Robbins, et al. v. White, 1906, 52 Fla. 613, 42 So. 841; New Fort Pierce Hotel Co., for Use of Carlton v. Phoenix Tax Title Corp., 126 Fla. 552, 171 So. 525; 16 Am. Jur., Dedication, § 56. One who owns land which extends to the ordinary high water mark of navigable waters is generally regarded as a riparian owner with incident riparian rights. These rights may be regulated but not expropriated, nor may they be materially impaired without due process of law. Broward v. Mabry, 1909, 58 Fla. 398, 50 So. 826; Pounds v. Darling, 1918, 75 Fla. 125, 77 So. 666, L.R.A. 1918E, 949, and cases cited infra. Cf. Fla. Stat. § 347.15, F.S.A. relating to certain public and private rights, privileges and franchises, and which reads as follows:
"347.15 Due process of law required in preemption.  All easements and proprietary rights, of the waters and lands contemplated in §§ 347.11-347.18 incident to riparian holdings, and vested in private owners, are reserved in the owners thereof, to be preempted only after due process of law."
I find no fault insofar as the majority opinion confirms the determination that the eastern boundary of the easement was intended to be the waters of New River Sound. Brickell v. Town of Fort Lauderdale, 1918, 75 Fla. 622, 626, 78 So. 681. Although the plat specifies only 50 feet right of way for Ocean View Drive, the limits of the easement must be given a more liberal construction in the light of the physical circumstances at the time of the dedication. The plat, by placing the eastern boundary of the easement contiguously along the water's edge, evinces an intent that the easement would continue to extend to the water's edge notwithstanding future accretion or erosion. The apparent repugnancy resulting from subsequent accretion is resolved against the dedicator according to the applicable rule of construction. The only fixed or static boundary of the easement being the west boundary of the Drive, the width of the easement accordingly *764 increases or decreases with the natural or imperceptible changes in the water's edge. It is correct to hold that the accretions attaching to the fee became subject to the easement and are a part of it.
The fee interest, on the other hand, remains in the plaintiffs since accretions generally belong to the owner of the upland to which they attach. Ford v. Turner, Fla. App. 1962, 142 So.2d 335. See also Siesta Properties, Inc. v. Hart, Fla.App. 1960, 122 So.2d 218; Mexico Beach Corporation v. St. Joe Paper Co., Fla.App. 1957, 97 So.2d 708. Title to these accretions, unless excepted, passes with the land to which they are appurtenant. American Mortgage Corp. v. Lord, Fla.App. 1961, 132 So.2d 40. Likewise * * * "[w]here the fee to a street along a river front is in the abutting owner, the title to accretions will be in him." Marshall v. Hartman, 1932, 104 Fla. 143, 139 So. 441. Here, therefore, the width of both easement and fee has increased with the "gradual or imperceptible" easterly movement of the high water mark.
With these observations the area of partial agreement ends. The import of the decree is that all of the dedicator's reserved rights, except those that might be shared in common with the public, became merged or absorbed in the public road easement and could not be validly withheld or modified inasmuch as the city has administrative jurisdiction over the easement. Bearing in mind that this easement is a limited servitude, I am convinced that the above concept is unsound.[3]
The city clearly has the right to enter and use all portions of the easement for road maintenance purposes. For such purposes the easement continuously extends to the highwater mark of New River Sound and should not be infringed; but I find no controlling law[4] or overriding public policy that requires the lodgment of exclusive riparian rights in the city contrary to the recorded intent of the dedicator. It is elementary that only such dedicatory rights may be accepted as are actually or impliedly given. Contrarily the instant holding permits the city to accept the benefits of dedication and at the same time wholly reject the reservation of rights; and, further, the decree virtually takes the entire package of rights reserved and confers them upon the defendant, a public corporation having proprietary as well as governmental powers.
Under the decree as entered the city, in its proprietary capacity and as exclusive owner of riparian rights, conceivably could erect a marina or establish a public beach with auxiliary facilities along the easement. Assuming that these facilities would not conflict with plaintiffs' privileges possessed in common with the public, they *765 would certainly conflict with the plain intent of the dedication, the private right of the plaintiffs to unobstructed view and enjoyment of the waterfront, anchorage and wharfage privileges and unimpeded right of ingress and egress to and from their lots and the water. The value of plaintiffs' lots is significantly involved. Since the easement was dedicated only as a street, it was not intended that the city should have riparian rights extending past the land's edge.
The rights of a riparian owner are property rights which cannot be taken without just compensation. See Thiesen v. Gulf, F. & A. Ry. Co., 1918, 75 Fla. 28, 78 So. 491, 506-507, L.R.A. 1918E, 718, and cases cited therein; I Farnham on The Law of Waters and Water Rights, pages 297, 667-668; 93 C.J.S. Waters § 9; 21 A.L.R. 206 (Annotation).
In Yates v. Milwaukee, 10 Wall. 497, 19 L.Ed. 984, Mr. Justice Miller, speaking for the Supreme Court of the United States, said:
"This riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and if necessary that it be taken for the public good, upon due compensation." (Emphasis supplied)
In Thiesen v. Gulf F. & A. Ry. Co., supra, 78 So. at 507 the Florida Supreme Court held:
"Riparian rights we think are property, and, being so, the right to take it for public use without compensation does not exist. The fronting of a lot upon a navigable stream or bay often constitutes its chief value * * *. The right of access to the property over the waters, the unobstructed view of the bay, and the enjoyment of the privileges of the waters incident to ownership of the bordering land would not, in many cases, be exchanged for the price of an inland lot in the same vicinity. In many cases, doubtless, the riparian rights incident to the ownership of the land were the principal, if not the sole, inducement leading to its purchase by one and the reason for the price charged by the seller."
See Brickell v. Trammell, 1919, 77 Fla. 544, 82 So. 221, 227; Broward v. Mabry, 1909, 58 Fla. 398, 50 So. 826; Pounds v. Darling, 1918, 75 Fla. 125, 77 So. 666, L.R.A. 1918E, 949.
None of the cases cited in the majority opinion involved riparian rights reserved. See and compare McCloskey v. Pacific Coast Co., 9 Cir.1908, 160 F. 794, 22 L.R.A., N.S., 673; Barclay v. Howell's Lessee, 6 Pet. 498, 512, 8 L.Ed. 477; Godfrey v. City of Alton, 1850, 12 Ill. 29, 52 Am.Dec. 476; Geiger v. Filor, 1859, 8 Fla. 325, 327; Village of Pewaukee v. Savoy, 1899, 103 Wis. 271, 79 N.W. 436, 50 L.R.A. 836; Barney v. City of Keokuk, 1877, 94 U.S. 324, 339, 24 L.Ed. 224; Brickell v. City of Fort Lauderdale, 1918, 75 Fla. 622, 626, 78 So. 681. Most of these cases concern a common law dedication where no plat was recorded. The Florida case last cited supra does recognize that if any reservation is made it must be clear.
In City of Tarpon Springs v. Smith, 1921, 81 Fla. 479, 88 So. 613, 621, the Supreme Court stated:
"* * * Wherever the street * * * touches or approximately touches the body of the * * * River, the riparian rights that are appropriate to a street easement were also impliedly dedicated as an incident; there being no express or implied reservation by the dedicator of such riparian rights." (Emphasis supplied)
In the Tarpon Springs case the Supreme Court appears to have predicated its decision on the fact that there was no reservation of rights. The majority opinion of this *766 court dismisses the quoted statement as dictum but, whether dictum or a controlling factor, the Supreme Court expressed its reasoning; and the same reasoning is reflected in Feig v. Graves, Fla.App. 1958, 100 So.2d 192, 195:
"A dedicator may reserve all riparian rights appurtenant to the land encumbered by the easement dedicated. Florida East Coast Ry. Co. v. Worley, 1905, 49 Fla. 297, 38 So. 618. Riparian rights were not reserved in the case at bar. In the absence of such a reservation whether these rights are included within the scope of a `dedication' depends upon the purpose for which the easement was granted and the location of the property burdened with the easement."
Florida East Coast Ry. Co. v. Worley, 1905, 49 Fla. 297, 38 So. 618, 622 concerned a plat which purported to reserve a strip of land from a parcel marked "Park." In that case the Supreme Court stated:
"* * * There is consequently an apparent inconsistency between the different parts of the plat. How, then, should it be construed? The plat is a written instrument, and * * * must be construed as a whole, in order that the intention of the parties may be ascertained, and every part of the instrument be given effect." (Emphasis supplied)
The Court there construed the reservation as a reservation of the reversion and of the riparian rights. Cf. Beck v. Littlefield, Fla. 1953, 68 So.2d 889.
My conclusion is that the riparian rights in this case should not be treated as an indivisible package of privileges attached exclusively to the easement. The contrary holding unreasonably advances the servitude over the principal estate, materially prejudices the plaintiffs in the use and value of their property and is contrary to manifest intent. In Florida Power Corporation v. Hicks, 156 So.2d 408, this court speaking through Associate Judge Germany said:
"Easements once granted and fixed are not subject to the whims of either the dominant or servient owners of the land and can only be changed by the mutual consent of the parties."
The easement may be protected without endowing it with attributes over and beyond those reasonably incident to its prescribed use. "A dedication must be understood and construed with reference to the objects and purposes for which it was made." Godfrey v. City of Alton, 1850, 12 Ill. 29, 52 Am.Dec. 476, 477.
No party or agency should be decreed the owner of greater property rights than those which have been conveyed or dedicated to it or acquired by necessary implication, prescription or condemnation. The defendant city has been treated with excessive generosity. The plaintiffs should be adjudged owners of the subject land with such riparian rights and privileges as do not burden the easement according to the purpose of its dedication. The Chancellor should be given the opportunity to enter such a decree.
NOTES
[1] The complaint was filed in 1946, and by successive series of extensions of time, stipulated to by counsel, the cause was last heard by the court in 1960.
[2] This conclusion is substantiated to a certain extent by the decision in Earle v. McCarty, Fla. 1954, 70 So.2d 314. The Court there noted that a straight line indicates a boundary not only of the street but also of the land west of it, and that the subdivider would have used an undulating line had there been an intention to dedicate all land between the east boundary of the street and the water.
[3] See also Wilson v. Dunlap, Fla. 1958, 101 So.2d 801, where the question arose as to whether the grant of upland lots, separated from water by a strip dedicated as "Beach" and "Beach Parkway," convey the underlying fee to the entire width of the strip, or only to the half-way point. After discussing some of the pertinent decisions and noting that the authorities were divided, the Court found it unnecessary to answer the question.
[4] Murrell v. United States, 5 Cir.1959, 269 F.2d 458, 463.
[5] E.g., Forgeus v. Santa Cruz County, 1914, 24 Cal. App. 193, 140 P. 1092, and cases there cited.
[6] This Act, with subsequent amendments, now appears in Chapter 271, Florida Statutes, F.S.A.
[7] In McCloskey the citation is Barclay v. Howell's Lessee, 6 Pet. 498, 512, 8 L.Ed. 477, and in Geiger, supra, the citation is Blakely, &c., v. Hemley, lessee, 6 Peters, 510. The reference in each instance is to the same decision of the Supreme Court of the United States.
[1] See portion of plat reproduced in majority opinion.
[2] q.v. This section purports to give a statutory definition of riparian rights by declaring them not "proprietary" in nature. The section does not affect the merits of this case since riparian rights have been judicially recognized as property rights. The section was enacted long after the instant dedication.
[3] Typical characteristics of merger in real property law are indicated in the following definition in Vol. 2 Bouv.Law Dict., Rawles Third Revision, p. 2197:

"The absorption of a thing of lesser importance by a greater, whereby the lesser ceases to exist but the greater is not increased."
* * * * *
"Merger is not favored in equity and is only allowed to promote the intention of the parties or for other special reason." (Emphasis supplied)
[4] The Chancellor's memorandum opinion upon which the final decree is predicated cites and purportedly applies 56 Am.Jur., Waters, § 280 to the effect that if a public street exists so that its boundary line and the waters of a navigable lake meet, the riparian rights incident to the land composing the street belongs to the public. However, that portion of the decree citing and quoting aforesaid § 280 of 56 Am.Jur., Waters, failed to include the following language of the same section:

"[T]he majority of the courts have followed the rule that land which is separated from water by a highway or street the fee of which is in the public is not riparian land; but where the fee in the land covered by the highway or street is in the owner of the land, riparian rights remain in such owner." (emphasis supplied) Cf American Cyanamid Co. v. Sparto, (5th Cir.) 1959, 267 F.2d 425, 428; also 34 Fla.Jur., Waters and Watercourses, § 128.